**INTERNATIONAL LOTTERY, INC., Appellee,**

v.

**KEROUAC, Appellant.**

[Cite as *Internatl. Lottery, Inc. v. Kerouac* (1995), 102 Ohio App.3d 660.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930920.

Decided April 26, 1995.

662

*Taft, Stettinius & Hollister* and *Russell S. Sayre,* for appellee.

*Stephen R. Felson* and *James J. Chalfie,* for appellant.

GORMAN, Judge.

The defendant-appellant, Armand R. Kerouac, Jr., appeals from the trial court's order of November 17, 1993, which overruled his motion for relief from the judgment entered against him on March 4, 1993.[1] In his two assignments of error, Kerouac contends that (1) the trial court lacked subject-matter jurisdiction, and (2) the trial court abused its discretion by overruling his motion for relief from judgment under Civ.R. 60(B). For the reasons set forth below, the judgment of the trial court is affirmed in part and reversed with respect to the award of attorney fees.

On June 26, 1992, the plaintiff-appellee, International Lottery, Inc. ("International"), filed a complaint against Kerouac in common pleas court, seeking the specific performance of a stock repurchase agreement, a declaratory judgment concerning the parties' obligations under a consulting agreement, and attorney fees. On August 18, 1992, James C. Dragon, an attorney from Massachusetts, filed a petition on behalf of Kerouac to remove the case to federal district court. Dragon subsequently mailed an answer and counterclaim to the clerk of the common pleas court, which was docketed on October 20, 1992. He filed the answer and counterclaim again on November 27, 1992. Although no order appears of record, it is undisputed that at some point during the proceedings, the district court remanded the case to the common pleas court.

On February 2, 1993, International's counsel, in compliance with Civ.R. 5, mailed Dragon a notice that the case was set for trial or default on March 4, 1993, in common pleas court. On March 4, 1993, in the absence of Dragon or Kerouac, the trial court entered judgment against Kerouac on the complaint and awarded International $4,900 in attorney fees. That judgment was not appealed.

On August 17, 1993, Kerouac's present counsel entered his appearance for Kerouac and filed a motion for relief from judgment pursuant to Civ.R. 60(B)(1). On November 17, 1993, the trial court overruled Kerouac's motion. Kerouac filed a notice of appeal on December 2, 1993. While the appeal was pending, Kerouac filed a second Civ.R. 60(B) motion in the trial court. This court remanded the case to the trial court for disposition of the second motion with instructions to the trial court to file a supplemental record. On April 19, 1994, the trial court overruled Kerouac's second Civ.R. 60(B) motion. Kerouac did not appeal this order. Therefore, appellate review is limited to the trial court's order of November 17, 1993, which overruled Kerouac's first Civ.R. 60(B) motion.

---

1. We have *sua sponte* removed this case from the accelerated calendar.

## A. SUBJECT–MATTER JURISDICTION

In his first assignment of error, Kerouac contends that the absence of the district court's remand order on the common pleas court's docket indicated that the clerk of the district court did not mail a certified copy to the clerk of the common pleas court as required by Section 1447(c), Title 28, U.S.Code, to vest jurisdiction in the common pleas court. This assignment of error is without merit.

Initially, we note that Kerouac did not waive the issue of subject-matter jurisdiction by failing to raise it in the trial court in his first Civ.R. 60(B) motion for relief from judgment. Lack of subject-matter jurisdiction may be raised for the first time on appeal. *Jenkins v. Keller* (1966), 6 Ohio St.2d 122, 35 O.O.2d 147, 216 N.E.2d 379, paragraph five of the syllabus. Because the judgment of a court lacking subject-matter jurisdiction is void *ab initio,* authority to vacate the order is not derived from Civ.R. 60(B), but from the reviewing court's inherent power. *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, paragraph four of the syllabus.

We agree, however, with International's argument that the language of Section 1447(c), Title 28, U.S.Code, which requires the clerk of the district court to mail a certified copy of the remand order to the clerk of the state court, is not jurisdictional. As the district court held in *Van Ryn v. Korean Air Lines* (C.D.Cal.1985), 640 F.Supp. 284, once the federal court ordered an action remanded to state court, the federal court was divested of jurisdiction, notwithstanding the failure of the clerk of the district court to send a certified copy of the order to the state court clerk. The court in *Van Ryn* reasoned that, as a matter of policy, the limited jurisdiction of federal courts suggests that the state court's jurisdiction vests as soon as the federal court orders that removal was not proper. The court further reasoned that logic indicates that jurisdiction be determined by the district court's act of entering its remand order rather than by the clerk's ministerial act of mailing a certified copy of that order. To hold otherwise would promote form over substance.

Kerouac's first assignment of error is overruled.

## B. MOTION FOR RELIEF FROM JUDGMENT

In his second assignment of error, Kerouac contends that the trial court abused its discretion by overruling his Civ.R. 60(B) motion for relief from judgment. Recognizing the futility of prevailing on Dragon's allegation that he did not receive notice of the trial date, Kerouac maintains that he did not appear at trial because International failed to give him notice as required by Civ.R. 55(A) when he was acting *pro se* in the common pleas court. His claim that Dragon

represented him in district court but not in common pleas court is specious, and incorrectly assumes, contrary to Sections 1446 and 1447, Title 28, U.S.Code, that when Dragon removed the case to district court, a new case was created. Although a case removed from a state court is treated as if it had been commenced in district court, removal merely vests exclusive jurisdiction of the state court action in the district court. See Wright, Miller, & Cooper, Federal Practice and Procedure (1985, Supp.1994), Sections 3738 and 3739.

When Dragon filed the petition for removal, he expressed a clear intention to defend and thereby entered Kerouac's appearance in the common pleas court for purposes of Civ.R. 55(A). See AMCA Internatl. Corp. v. Carlton (1984), 10 Ohio St.3d 88, 90, 10 OBR 417, 419, 461 N.E.2d 1282, 1285; Muskingum Cty. v. Melvin (1990), 69 Ohio App.3d 811, 814–815, 591 N.E.2d 1302, 1304 (filing an extension for leave to plead is an appearance). As provided by Civ.R. 11, Dragon's signature on Kerouac's petition for removal was his designation that he was the "attorney of record." Dragon's subsequent letter to the clerk of the common pleas court in which he claimed the copy of the answer and counterclaim he sent was merely a "courtesy only" copy does not alter his appearance as counsel of record established by his signature on the petition for removal. Consistent with Civ.R. 11, the assignment commissioner in the court of common pleas assigned Dragon an attorney identification number, and the clerk entered Dragon's name on the appearance docket as attorney of record for Kerouac. Dragon never requested or was granted leave to withdraw as Kerouac's attorney.

The trial court correctly found compliance with Civ.R. 55(A), where Dragon, as Kerouac's representative, was served with written notice of the application for judgment. The trial court then properly granted International's motion for judgment on the merits in Kerouac's absence by means of an ex parte trial except with respect to the award of attorney fees as discussed later in this opinion. See Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn. (1986), 28 Ohio St.3d 118, 28 OBR 216, 502 N.E.2d 599.

 A judgment entered by default may be set aside in the trial court's discretion in accordance with Civ.R. 60(B). Civ.R. 55(B). Civ.R. 60(B) is a remedial rule entitled to liberal construction with a view toward effecting a just result, but "[t]he burden is upon the movant to demonstrate that the interests of justice demand the setting aside of a judgment normally accorded finality." Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564, 567. "Abuse of discretion" is defined as more than an error of law or judgment, but rather an unreasonable, arbitrary, or unconscionable attitude on the part of the court. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1252.

The negligence of a party's attorney is imputed to the party who seeks relief from judgment on grounds of excusable neglect or inadvertence under Civ.R. 60(B)(1). *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, paragraph four of the syllabus. A trial court does not abuse its discretion by overruling a Civ.R. 60(B)(1) motion on grounds of excusable neglect where a review of the circumstances demonstrates that a defaulting defendant's conduct, or his attorney's conduct imputable to him, "exhibited a disregard for the judicial system and the rights of the plaintiff." *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122, syllabus.

As out-of-state counsel, Dragon was not entitled to preferential treatment concerning procedural standards and time limits. See *Brown v. Akron Beacon Journal Publishing Co.* (1991), 81 Ohio App.3d 135, 143, 610 N.E.2d 507, 512. The significant facts available to the trial court in determining whether the judgment entered against Kerouac resulted from excusable neglect or inadvertence were (1) Kerouac never questioned service of process; (2) Dragon signed the petition for removal; (3) International sent notice of the date for trial or default to Dragon at both mailing addresses listed on his stationery; (4) the clerk mailed notice of the judgment against Kerouac to Dragon in compliance with Civ.R. 58 as reflected by the docket; and (5) Kerouac did not appeal the judgment entered against him.

"Relief from a final judgment should not be granted unless the party seeking such relief makes at least a *prima facie* showing that the ends of justice will be better served by setting the judgment aside." *Rose Chevrolet, Inc. v. Adams,* 36 Ohio St.3d at 21, 520 N.E.2d at 567. Upon review, we cannot conclude from these circumstances that the trial court abused its discretion when it overruled Kerouac's Civ.R. 60(B) motion and rejected Kerouac's claim of excusable neglect due to his reliance on Dragon.

Kerouac also claims that International is estopped to deny that he was acting *pro se* in the common pleas court because International moved to strike the answer and counterclaim as being filed out of time by an attorney who was not registered in Ohio. Procedural violations of the Civil Rules did not negate Dragon's appearance as Kerouac's attorney of record and are not a valid basis for Kerouac to assert an estoppel claim.

## C. ATTORNEY FEES

Kerouac contends that pursuant to Civ.R. 60(B), the trial court's award of attorney fees to International must be vacated. Having raised the issue, he abdicates to us the responsibility for analysis.

■ A Civ.R. 60(B)(1) motion provides a collateral attack on the judgment on the ground that the judgment is voidable because of the movant's excusable neglect or inadvertence. Civ.R. 60(B)(1) is not a substitute for timely appeal and does not contemplate a direct attack on the judgment. *Doe v. Trumbull Cty. Children Serv. Bd.* (1986), 28 Ohio St.3d 128, 28 OBR 225, 502 N.E.2d 605, paragraph two of the syllabus. The Supreme Court, however, has held that if the evidence presented at the hearing on a default judgment is insufficient to support the award, Civ.R. 60(B) is an appropriate means to challenge the amount of the attorney fees awarded. *Carr v. Charter Natl. Life Ins. Co.* (1986), 22 Ohio St.3d 11, 13, 22 OBR 9, 11, 488 N.E.2d 199, 202.

Unlike the movant in *Carr,* Kerouac did not specifically challenge the award of attorney fees by his Civ.R. 60(B)(1) motion. In *State v. Glaros* (1960), 170 Ohio St. 471, 475, 11 O.O.2d 215, 217, 166 N.E.2d 379, 382, the Supreme Court said, "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." See *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317–318, 436 N.E.2d 1001, 1003 (rule applied in a civil case although qualified by the "plain error" exception); *Security Ins. Co. v. Regional Transit Auth.* (1982), 4 Ohio App.3d 24, 28, 4 OBR 45, 49–50, 446 N.E.2d 220, 225. If we were to affirm this aspect of the judgment on grounds of waiver, however, it would allow a judgment which is palpably and fundamentally unfair to stand for purely procedural reasons.

■ The Ohio Supreme Court adheres to the American Rule, which prohibits the prevailing party's recovery of attorney fees as part of the costs of civil litigation except where (1) there is statutory authorization (*e.g.,* R.C. 163.21, 309.13, 733.61 and 1313.51), (2) the unsuccessful party acts "in bad faith, vexatiously, wantonly, obdurately, or for oppressive reasons," *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 181, 75 O.O.2d 224, 226, 347 N.E.2d 527, 530, or (3) the parties in a noncommercial transaction by contract agree to fee-shifting in which they provide that the unsuccessful party is to pay the prevailing party's attorney fees under Restatement of the Law 2d, Contracts (1981) 160, Section 356, Comment *d. Nottingdale Homeowners' Assn. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702; *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 513 N.E.2d 253 (terms of indemnity agreement authorized indemnitee to recover legal fees).[2] The Ohio Supreme Court's continued approval of the American Rule stems from its reliance in *Alyeska Pipeline Serv. Co. v.*

---

2. For the history relating to the American Rule, see Comment, Attorney Fees in Contract Disputes in Ohio (1990), 51 Ohio St.L.J. 562, 564–566.

*Wilderness Soc.* (1975), 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141, 153 (disallowing attorney fees under the "private attorney general" exception for successful cases brought in the public interest), and *Fleischmann Distilling Corp. v. Maier Brewing Co.* (1967), 386 U.S. 714, 717, 87 S.Ct. 1404, 1406, 18 L.Ed.2d 475, 478 ("costs of the action" under a federal trademark act did not include attorney fees).

The trial court's award of attorney fees to the plaintiff in violation of the American Rule is reversible on two grounds: (1) plain error and (2) lack of subject-matter jurisdiction. Although the affidavit of International's counsel in which he stated he spent in excess of fifty hours on this case satisfies the reasonableness of the award for purposes of appellate review in light of *Carr, supra,* we find nothing to authorize the trial court's award of attorney fees to International pursuant to an exception to the American Rule in any of the following sources: (1) R.C. Chapter 2719, which makes no provision for attorney fees in actions for declaratory judgment, (2) International's complaint, which contains breach-of-contract allegations only, (3) the stock repurchase agreement or the consulting agreement, as attached as exhibits to the complaint, which are silent as to attorney fees, or (4) Civ.R. 11 sanctions.

### 1. Plain Error

The rule that issues not raised in the trial court are waived and cannot be raised for the first time on appeal persists in contemporary appellate practice solely because of an inherited tradition. Six hundred years ago, a separate quasi-criminal proceeding existed to challenge the judge for his wrongful act when, during the trial, he incorrectly ruled on questions of law. It was, therefore, held that the judge was entitled to know the charges against him. Sunderland, Improvement of Appellate Procedure (1940), 26 Iowa L.Rev. 3, 7–8. The common-law writ of error which evolved did not seek to review the merits of the judgment. The sole inquiry, which is the origin of today's formal assignment of error, was whether the judge committed error. If he did, the judgment failed. Whether the judgment was just or unjust was immaterial since the aim of the writ of error was the existence or absence of error. *Id.* at 7–8.

In criminal cases, the Ohio Supreme Court deems that application of the waiver doctrine is discretionary. Even if the waiver is clear, the Supreme Court "reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.* (1988), 38 Ohio St.3d 149, 151, 527 N.E.2d 286, 288; cf. *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 522 N.E.2d 524 (attacking forfeiture statute as vague was waived). In civil cases, the Supreme Court has held that the plain error rule can be used in exceptional situations to

prevent a manifest miscarriage of justice. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800. Although the Supreme Court has not expressly extended avoidance of the waiver doctrine beyond its own analysis, neither has it suggested that an intermediate appellate court should view waiver any differently.

■ Our analysis finds manifest injustice at the very heart of the issue in this case. The trial court's judgment ordering Kerouac to pay attorney fees is contrary to the American Rule. The result is that the trial court awarded attorney fees based upon a nonexistent claim. Accordingly, this aspect of the trial court's judgment is so fundamentally unfair that it results in a manifest miscarriage of justice rising to the level of plain error and should be reversed.

2. Subject–Matter Jurisdiction

■ Subject-matter jurisdiction is never waived and can be determined for the first time on appeal. *Jenkins v. Keller, supra.* If the trial court did not have subject-matter jurisdiction to award attorney fees against Kerouac because of preclusion by the American Rule, then that part of the judgment was void *ab initio.* As we have noted earlier, authority to vacate a void judgment derives from the court's inherent power and not from Civ.R. 60(B). *Patton v. Diemer,* 35 Ohio St.3d at 70, 518 N.E.2d at 944.

■ The existence of the court's own subject-matter jurisdiction in a particular case poses a question of law which the court has the authority and responsibility to determine. *State ex rel. Connor v. McGough* (1989), 46 Ohio St.3d 188, 189–190, 546 N.E.2d 407, 409. When the question is whether the court can award attorney fees in a given case, the court necessarily must inquire into the issue even if it turns out that there is no subject-matter jurisdiction because an award would be outside the limits of the American Rule. It is incumbent on the trial court to examine the facts to determine if a claim for attorney fees fits within one of the three exceptions under the American Rule. By applying the American Rule to the specific facts, the trial court undertakes an analysis similar to that for determining if a complaint states a claim upon which relief can be granted when tested by a Civ.R. 12(B)(6) motion. The analysis assumes that the court has jurisdiction to make the determination and then tracks the process used to determine if the claim should be dismissed in light of Civ.R. 12(B)(6). Therefore, the trial court's responsibility to make this analysis in light of the American Rule assumes it will inquire into its own subject-matter jurisdiction on a case-by-case basis.

3. Void or Voidable Judgment

If the waiver doctrine cannot be avoided on the basis of plain error, and if the judgment awarding attorney fees was merely voidable, Kerouac cannot raise the issue for the first time on appeal. If the judgment was void, however, because the court lacked subject-matter jurisdiction, under our inherent power rather than by collateral use of Civ.R. 60(B), it is incumbent upon us to set aside the unjust operation of that part of the judgment. *Patton v. Diemer*, at paragraph four of the syllabus; *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 59 O.O. 74, 133 N.E.2d 606; Staff Notes to Civ.R. 60(B).

In *State v. Taylor* (1841), 10 Ohio 379, 381–382, the Supreme Court determined that, without authorization by statute, an agreement awarding attorney fees to the prevailing party is void "and against the public policy of the country *and ought not to be enforced in courts of justice.*" (Emphasis added.) In *Nottingdale, supra,* 33 Ohio St.3d at 37, 514 N.E.2d at 707, the Supreme Court, in applying the American Rule to certain fee-shifting agreements, reiterated that when attorney fees are unauthorized, the contract is "void as against public policy." Although the Supreme Court's public-policy considerations in *Taylor* appear to focus on the usurious rate of interest when the prevailing party's attorney fees are added to the rate of interest in the contract, the Ohio courts seemingly accept the proposition that an award of attorney fees which violates the American Rule is void. See 19 Ohio Jurisprudence 3d (1980), Costs, Section 24. If public policy is the polestar, it follows that a trial court's judgment awarding attorney fees in violation of the American Rule involves the same considerations attending the trial court's entry of a judgment for attorney fees pursuant to a contract provision which violates the American Rule. Therefore, because of public-policy preclusions, the trial court in this case lacked subject-matter jurisdiction to award attorney fees as part of its judgment. The effect of its action is a void judgment which we must now vacate under our inherent power to correct a manifest injustice.

Finding the trial court's award of attorney fees void, we sustain that aspect of Kerouac's second assignment of error challenging the fee award.

The judgment of the trial court is affirmed, except with respect to the award of attorney fees. The judgment awarding attorney fees is reversed and held for naught.

*Judgment accordingly.*

HILDEBRANDT, P.J., and DOAN, J., concur.