DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Jayne Kramic-Teuber appeals the decision of the Lorain County Court of Common Pleas, Domestic Relations Division, overruling the magistrate's recommendation of an award of spousal support and one-half of Jayne's claimed expenses and its exclusion of certain documents not filed by the deadline set by the court and witnesses whose names were not provided to the court as ordered. We affirm.
Jayne Kramic-Teuber and Steven K. Teuber were married on July 5, 1991 in Jackson, Michigan. No children were born as issue of the marriage. On November 19, 1993, Jayne filed a complaint for divorce in the Lorain County Court of Common Pleas, Domestic Relations Division.
In the fall of 1994, Steven moved the trial court for a temporary order requiring that he and Jayne each pay one-half of the household expenses. At approximately the same time, Jayne moved the trial court to order Steven to show cause why he should not be held in contempt for failure to comply with a temporary order of the trial court dated August 25, 1994 by failing to pay the mortgage on the couple's condominium. Hearings on these motions were held in the summer and fall of 1995, and on October 10, 1995, the magistrate filed his report, which was adopted and entered as the judgment of the trial court the same day. In its judgment entry, the trial court found that Steven was indebted to Jayne in the amount of $4,142, an amount which represented one-half of Jayne's claimed expenses during the separation.
Jayne and Steven filed objections to the magistrate's report. Jayne objected to the following relevant findings of fact by the magistrate, arguing that were not supported by the evidence adduced at the hearing:
 [T]hat [Jayne's] necessaries and more were covered by [Steven] and it appears all [Jayne's] income was discretionary.
 [T]hat accordingly [Steven] is responsible for 1/2 of [Jayne's] expenses shown on her Exhibit A * * * or $4,142.
Steven objected to the following finding of fact of the magistrate:
 That plaintiff gave up a high paying job in Columbus, Ohio at the time of the marriage and since August 1993, she had been employed at $19,000 per year at the Cleveland Clinic.
In addition, Steven objected to the magistrate's recommendation that he be ordered to pay one-half of the expenses submitted as Jayne's Exhibit A, arguing that many of the expenses were unsubstantiated by receipts.
On May 6, 1996, Jayne filed a new complaint for divorce.[1] On May 8, 1996, the trial court ordered that all the pending motions and objections from the "old case" be removed and placed in the present case.
On October 28, 1996 the magistrate ordered Steven to pay Jayne temporary spousal support in the amount of $650.00 per month. Steven moved for a stay of this order. On March 6, 1997, the trial court journalized its findings of fact and its order regarding the objections to the magistrate's recommendations, filed some eighteen months before. The trial court ordered Steven to pay Jayne the sum of $4,142.00 as recommended by the magistrate and terminated Steven's obligation to pay temporary support to Jayne. The trial court based the decision to terminate spousal support on the fact that Jayne has two master's degrees, a nursing degree and has had the ability to become self-sufficient during the pendency of the case.
The matter was heard on March 17, 1997. The actual divorce hearing took approximately three days. On March 26, 1997 the trial court filed its journal entry granting the parties a divorce. In addition, the trial court ordered that each party was entitled to the personal property in his possession, except for a few sentimental items which were awarded to Steven, and that each party was to be responsible for the debts currently in his or her own name. No spousal support was awarded. The trial court's previous order requiring Steven to pay Jayne the sum of $4,142.00 was expressly not carried forward to the final order. Jayne appeals, assigning three errors. Additional factual and procedural history will be discussed as it relates to each assignment of error.
 I.
Jayne's first and second assignments of error are interrelated, therefore we shall discuss them together. Jayne's first assignment of error states:
 THE TRIAL COURT ABUSED ITS D[I]SCRETION BY OVERRULING THE MAGISTRATE'S ORDER OF SPOUSAL SUPPORT.
Jayne's second assignment of error states:
 THE TRIAL COURT ABUSED ITS D[I]SCRETION BY OVERRULING THE MAGISTRATE'S ORDER OF REPAYMENT OF ONE-HALF OF EXPENSES TO THE APPELLANT FOR THE SUM OF $4,142.
When reviewing a trial court's adoption of a magistrate's proposed decision, the proper inquiry is whether the trial court abused its discretion in ruling on objections to the magistrate's decision. Perrine v. Perrine (Nov. 20, 1996), Summit App. No. 17736, unreported, at 7. An appellate court may reverse such a determination only when it appears that the trial court's actions were arbitrary or unreasonable. Id. When applying the abuse of discretion standard, an appellate court may not merely substitute its judgment for that of the trial court. Berk v. Mathews (1990),53 Ohio St.3d 161, 169. See, also Rogers v. Rogers (Dec. 17, 1997), Summit App. No. 18280, unreported, at 2-3.
The hearings before the magistrate on spousal support and housing expenses occurred in the summer and fall of 1995. The hearing before the trial court on the May 6, 1996 complaint for divorce began on March 17, 1997. There was an approximately eighteen-month interval between hearings. The actual divorce hearing took three days. The trial court based its decisions on the evidence adduced at the hearings that started on March 17, 1997, yet Jayne provides only a partial transcript of proceedings. The portion of the transcript provided pertains only to her third assignment of error. Jayne provides transcripts of the summer and fall 1995 proceedings. However, these transcripts are not very helpful, as circumstances may have changed between the time of the hearings before the magistrate and the divorce hearing before the trial court. The trial court apparently found that circumstances had changed enough to necessitate three days' worth of testimony and arguments in the matter before making its final decision.
"[I]n reviewing a trial court's decision, an appellate court must give due deference to the trial court's findings, as the trial judge is best able to observe the witnesses and use these observations in weighing the credibility of the testimony."Berger v. Dare (1994), 99 Ohio App.3d 103, 106, citing SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77.
It is the appellant's duty to provide this court with evidence to review. Because Jayne has not provided us with the relevant portions of the transcript of the March 17-19, 1997 hearing, we must accept the trial court's findings of fact as true. See Albanese v. Grossen (Feb. 25, 1998), Summit App. No. 18568, unreported, at 3. We will therefore review the trial court's decision in light of the facts found and set forth in its March 26, 1997 judgment entry.
The trial court found the following relevant facts:
 9. [Jayne] in 1990 possessed a Bachelor's Degree in Animal Science and Biology, a dual Master's in Science Education and Microbiologies, teacher certification, and had completed some of her doctorate course work in Public Health. She had in 1990, seven (7) years of teaching experience and six (6) years of experience with the Ohio Department of Health Laboratories.
* * *
 12. The parties agreed that [Jayne] would quit her position in Columbus and relocate to Lorain County so that she could embark upon her nursing degree, and [Steven] would pursue his law degree. Each did so. * * * [Jayne] in January 1991, accepted a position with the Cleveland Clinic Foundation as a microbiologist, earning approximately twenty thousand dollars ($20,000) to twenty-two thousand dollars ($22,000) annually. She was laid off from this position as a result of downsizing in approximately December, 1995. In July 1996, [Jayne] obtained a position with Elyria Memorial Hospital as a critical care nurse, earning $17.97 [per hour] for a guaranteed twenty-four (24) hours per week. Additionally, she receives an average of approximately eight (8) hours of additional work per week at Elyria Memorial Hospital. She further is able to work as an as-needed registered nurse at other facilities earning $23 per hour for an additional 8-16 hours per week. From the testimony of [Jayne], her average weekly earnings are between $615.28 and $907.10. Her annual salary, based upon her weekly earnings, ranges between $31,994.56 and $47,169.20. The average of these figures is thirty-nine thousand five hundred eighty-one dollars and eighty-eighty cents ($39,581.88). The Court finds that [Jayne] is capable of earning annually, from her own testimony, approximately thirty-nine thousand six hundred dollars ($39,600).
In addition to the above findings of fact, the trial court found that the parties separated on October 31, 1992, at which time Steven moved out of the marital residence. The trial court further found that Steven continued to provide support to Jayne until September 1995. According to the trial court, Jayne's living expenses at the time of the order were approximately $1,600 per month and Steven's living expenses were approximately $2,833 per month, while his net monthly pay was approximately $2,850. The trial court expressly stated that it gave due consideration to each factor set forth in R.C. 3105.18[2], the statute governing the calculation of spousal support, when it found that spousal support was unwarranted in this case.
The trial court found that for purposes of spousal support, the parties' marriage was of relatively short duration.
The trial court's findings of fact support its conclusion that Jayne is and has been able to be self-sufficient and responsible for household and living expenses incurred by her. In addition, the trial court's conclusion that the marriage lasted only eighteen months is supported by the findings of fact in its judgment entry. The parties resided together as husband and wife from the date of their marriage on July 5, 1991 until their separation on October 31, 1992, and did not cohabit thereafter. Based on the foregoing, we cannot say that the trial court abused its discretion in determining that spousal support would be inappropriate and in not awarding Jayne one-half of the housing expenses that she had claimed in the hearings before the magistrate.
Jayne's first and second assignments of error are overruled.
 II.
Jayne's third assignment of error states:
 THE TRIAL COURT ABUSED ITS D[I]SCRETION AND ERRED TO THE [PREJUDICE] OF THE APPELLANT BY RULING THAT THE APPELLANT COULD NOT PUT-ON TESTIMONY, NOR SUBMIT EVIDENCE AS A RESULT OF APPELLANT'S COUNSEL'S FAILURE TO PROPERLY PREPARE FOR TRIAL AND FAILURE TO SUBMIT DISCOVERY, EVIDENCE, OR WITNESS LIST TO THE COURT.
We note initially that Jayne appears to be attacking alleged errors made by her attorney, not an error made by the trial court, although her third assignment of error frames it as such.
On February 5, 1997, the trial court ordered the parties to submit to each other and to the court final pre-trial statements, a list and photocopies of all exhibits to be used at trial, a trial brief, and a list of all witnesses, stating:
 Any witnesses that are not listed in the submission due on or before March 1, 1997, or any exhibits not submitted by March 1, 1997, will not be permitted to be used at trial.
At the hearing, the trial court noted that Jayne's attorney did not submit the information as ordered by the court, in spite of being given until March 15, 1997 to do so. Consequently, the trial court stated that "[it] was not going to entertain the use or submission of documents that [the trial court] requested be exchanged on a date certain" and that were not produced or exchanged. Jayne's counsel and Steven, acting pro se, stated that there were to be no witnesses other than the parties.
"The negligence of a party's attorney is imputed to the party who seeks relief from judgment[.]" Internatl. Lottery, Inc. v.Kerouac (1995), 102 Ohio App.3d 660, 667 (discussing the effect of counsel's alleged negligence upon a Civ.R. 60(B) motion.) The conduct of a party's attorney is attributable to the party where the attorney "exhibited a disregard for the judicial system and the rights of [the other party]." Id.
For example, the Supreme Court of Ohio has held "that the failure to timely answer a complaint is negligence and should be imputed to the client." State ex rel. Weiss v. Indus. Comm.
(1992), 65 Ohio St.3d 470, 473, discussing GTE Automatic Elec.,Inc. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146.
 "[The party] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent."
(Emphasis omitted.) Griffey v. Rajan (1987), 33 Ohio St.3d 75,77, quoting Link v. Wabash RR. Co. (1962), 370 U.S. 626, 633-634,8 L.Ed.2d 734, 740.
In the case at bar, Jayne is seeking relief from this court in the form of a reversal of the trial court's decision. In Weirv. Needham (1985), 26 Ohio App.3d 36, 38, this court applied the rule set forth in GTE Automatic Elec., Inc., supra, holding that "[the party] may not now obtain relief from judgment * * * solely on the ground of misconduct by its own attorney." (Emphasis sic.) Cf. Andring v. Andring (1965), 3 Ohio App.2d 417, 421-422.
We see no reason to visit the alleged sins of Jayne's attorney upon Steven. See GTE Automatic Elec., Inc., supra, at 152, citing Link, supra, 370 U.S. 626, 633-634, 8 L.Ed.2d 7734, 740. Jayne's trial attorney and Steven were ordered to produce certain things by a certain date. Steven complied, while Jayne's attorney did not. On the date of the hearing, Jayne's attorney stated that he did not intend to call any witnesses other than the parties themselves.
Jayne's attorney did not comply with an express order of the court, in spite of having been notified of the consequences. The trial court did not abuse its discretion in disregarding any documents filed after the deadline. The trial court specifically stated at the hearing its reasons for imposing the deadline. The trial court stated that it wished to review the issues before the trial, and because Jayne's attorney did not comply, the trial court was unable to review the issues. Jayne's attorney's decision not to call witnesses may well have been a tactical decision, or it may have been a decision made in anticipation of the trial court's probable disallowance of witnesses whose names were not provided to the trial court or to Steven as ordered. In either event, rather than penalize Steven for Jayne's counsel's conduct, the appropriate remedy for Jayne is an action for malpractice against her attorney if she believes his conduct was negligent and prejudicial to her. See id. The trial court did not err in failing to consider untimely documents or in disallowing witnesses whose names were filed after the court-ordered deadline. Jayne's third assignment of error is overruled.
The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant
 Exceptions. _________________________ WILLIAM R. BAIRD
FOR THE COURT
DICKINSON, J.
SLABY, J.
CONCUR.
[1] Jayne voluntarily dismissed the October 1993 complaint. Also named as defendants in the May 6, 1996 complaint were Wolfgang Eigenseher, as statutory agent of Blue Marlin Software Company, Inc., a corporation allegedly "formed and owned in full or in part" by Steven, and Ford Motor Corporation, which Jayne alleged was engaged in business with Blue Marlin and was holding assets of and monies due Blue Marlin.
[2] R.C. 3105.18 provides in relevant part:
 (C)(1) In determining whether spousal support is appropriate and reasonable * * * the court shall consider all of the following factors:
(a) The income of the parties[;]
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
* * *
 (g) The standard of living of the parties established during the marriage;
 (h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties[;]
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
* * *
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities[.]