723 S.E.2d 211

**Lawton LIMEHOUSE, Sr., Respondent,**

v.

**Paul H. HULSEY and The Hulsey Litigation Group, LLC, Appellants.**

**No. 4805.**

Court of Appeals of South Carolina.

Heard April 13, 2010.

Decided March 10, 2011.

Withdrawn, Substituted and Refiled June 2, 2011.

Withdrawn, Substituted and Refiled June 16, 2011.

Rehearing Denied Aug. 12, 2011.

Certiorari Granted Aug. 10, 2012.

52

A. Camden Lewis and Ariail E. King, of Columbia; and Robert H. Hood, Deborah Harrison Sheffield, James B. Hood, and John K. Weedon, of Charleston, for Appellants.

Frank M. Cisa, of Mt. Pleasant, for Respondent.

**THOMAS, J.**

This is an appeal from an entry of default and the subsequent default damages trial based on a slander action against Paul Hulsey and the Hulsey Litigation Group, LLC (collectively Hulsey). Damages (actual and punitive) were found in excess of $7.3 million. Hulsey now appeals, alleging the trial court erred in (1) granting entry of default without subject matter jurisdiction, (2) failing to grant a motion to set aside the entry of default, (3) allegedly depriving Hulsey of due process in the default damages trial, and (4) allowing an award of $5 million in punitive damages. We affirm.

## FACTS

In 2004, Hulsey filed a class action suit against Lawton Limehouse, Limehouse's son, and L & L Services, Inc., a staffing agency owned by the pair. The suit alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), as well as other state and federal laws. Although the case eventually settled, during its pendency, Hulsey made allegedly slanderous statements that the "[Charleston] Post & Courier" published, including (1) Limehouse engaged in a classic racketeering scheme, (2) Limehouse's conduct set the community back 150 years, (3) Limehouse engaged in blatant indentured servitude, and (4) Limehouse created a perfect racketeering scheme just like Tony Soprano.[1]

In response, Limehouse filed suit against Hulsey on April 19, 2006. Service was perfected upon the Hulsey Litigation Group, LLC on April 20, 2006, and Paul Hulsey personally on April 21, 2006. On May 5, 2006, Hulsey filed a notice of removal to federal district court without filing an answer to the complaint. On June 2, 2006, Limehouse filed a motion to remand to state court. A federal district judge remanded the case to state court by an order dated July 19, 2006, for lack of federal subject matter jurisdiction.[2] The federal court electronically transmitted this order to counsel on July 20. The Charleston County Clerk of Court also received an uncertified

---

1. Tony Soprano is a fictional television character involved in organized crime.

2. Hulsey did not answer the complaint in federal court.

copy and filed the order on July 21. The Charleston County Clerk of Court mailed notice of the filing to all parties on July 27.

On August 21, 2006, Limehouse filed a request for entry of default. The Charleston County Clerk of Court entered default on August 21, and filed the same on August 22. Subsequently, the clerk mailed a Form 4 to all parties on August 24, 2006, noticing entry of default. On August 29, upon receipt of the Form 4, Hulsey filed an answer and motion to set aside entry of default pursuant to Rule 55(c), SCRCP.

In December, 2006, a circuit judge denied Hulsey's motion to set aside entry of default, and in February 2008, a different circuit judge presided over a jury trial on the issue of damages. On February 6, 2008, the jury returned a verdict for actual damages in the amount of $2.39 million and awarded punitive damages in the amount of $5 million. Nine days later, on February 15, 2008, Hulsey filed a motion to dismiss for lack of subject matter jurisdiction, after discovering there was no certified copy of the remand order on file with the Charleston County Clerk of Court. The trial court denied the motion, as well as the accompanying motion for a new trial. This appeal follows.

## ISSUES ON APPEAL

I. Did the trial court err in exercising jurisdiction over the case after remand?

II. Did the trial court err in failing to set aside the entry of default?

III. Did the trial court err in the manner in which the default damages trial was conducted?

IV. Did the trial court err in allowing an award of punitive damages?

## LAW/ANALYSIS

### I. Jurisdiction

Hulsey argues the trial court was, and still is, without jurisdiction over this matter because the clerk of the federal court failed to mail a certified copy of the remand order to the

Charleston County Clerk of Court. We disagree and find the mailing of the certified copy is not a jurisdictional requirement.

 Upon removal, the federal court acquires jurisdiction over the case, for the limited purpose of determining jurisdiction. *See Davis v. Davis,* 267 S.C. 508, 511, 229 S.E.2d 847, 848 (1976). Once the federal court determines that federal jurisdiction is not appropriate, the case is remanded to state court, and the remand ends the federal court's jurisdiction. 28 U.S.C. § 1446(d) (1996).

Congress has provided for a federal court's jurisdiction in section 1446(d): "Promptly after the filing of such notice of removal ... the defendant ... shall give written notice thereof to ... the clerk of such State court, which shall effect the removal and *the State court shall proceed no further unless and until the case is remanded.*" (emphasis added).

In addition, 28 U.S.C. § 1447(c) (1996) provides for "Procedure[s] after removal generally," and states:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.

In interpreting section 1447(c), a majority of federal circuits take the position that the finality of the remand and the accompanying loss of federal jurisdiction requires both entry of the order with the federal clerk of court *and* a certified copy being mailed to the state court. *See, e.g., Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 227 (3rd Cir.1995); *Hunt v. Acromed Corp.,* 961 F.2d 1079, 1081–82 (3rd Cir.1992); *Browning v. Navarro,* 743 F.2d 1069, 1078–79 (5th Cir.1984); *Fed. Deposit Ins. Corp. v. Santiago Plaza,* 598 F.2d 634, 636 (1st Cir.1979).

However, the Fourth Circuit takes a minority view, reasoning that because remands for lack of subject matter jurisdiction or defect in removal are unappealable, "the plain language of the statute[ ] .... support[s] the conclusion that § 1447 divests a district court of jurisdiction upon the entry of its remand order" despite the federal clerk's duty to send a certified copy. *In re Lowe*, 102 F.3d 731, 735 (4th Cir.1996) (considering and declining the majority approach, holding "a federal court loses jurisdiction over [the] case as soon as its order to remand the case is entered[ ] ... [f]rom that point on, it cannot reconsider its ruling even if the district court clerk fails to mail ... a certified copy");[3] *see also Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 235 n. 1 (4th Cir. 2007) (recognizing "a remand is effective when the district court mails a certified copy ... see [1447(c) ] ... *or* ... if the remand is based on the lack of subject-matter jurisdiction ... when the remand order is entered, *see* [*Lowe*]")[4] (emphasis added).

 Accordingly, the South Carolina Federal District Court lost jurisdiction when the order of remand was entered.[5]

---

3. The essence of our inquiry, as opposed to the federal court, is not whether the federal scheme provides for state court jurisdiction, but rather, whether it prohibits state court jurisdiction. *See infra.* Naturally, because a federal court does not determine state court jurisdiction, this distinction allays the dissent's concern that the question confronted in *Lowe* is different than the one we face here.

4. We do not rely on *Bryan* as dispositive of this case, nor do we find any reason to interpret this purely explanatory note—which specifically cites *Lowe*—to imply that *Lowe* does not stand for what it explicitly holds, i.e., a federal court loses jurisdiction upon entry of a remand for lack of subject matter jurisdiction.

 Although the dissent agrees the note is purely dicta, to the extent it is suggested the footnote bears on this matter, we note that the dissenting opinion ignores the second clause of the note, in which the Fourth Circuit reiterates the *Lowe* holding; presumably because its interpretation of the first clause is irreconcilable with *Lowe*. Further, the interpretation of the first clause is premised on a presumption, allegedly from *Bryan*, that remands for reasons other than lack of subject matter jurisdiction or defect in removal are not subject to section 1447(c). However, neither the Fourth Circuit, nor any other circuit, has put forth such a ruling, and *Bryan* itself refutes this presumption by recognizing, in a case in which the remand was based upon a reason *other than* lack of subject matter jurisdiction or defect in removal, that the state court could continue upon receipt of the certified mailing, citing section 1447(c). *See Bryan*, 492 F.3d at 241.

We believe this ends the inquiry. However, because Hulsey's assertion that the state court also lacks subject matter jurisdiction seems to leave the case caught in jurisdictional limbo, or as other courts have dubbed it, on "a jurisdictional hiatus," for lack of the mailing, *State v. City of Albuquerque*, 119 N.M. 169, 889 P.2d 204, 207 (Ct.App.1993) *aff'd* 119 N.M. 150, 889 P.2d 185 (1994), we therefore address whether the mailing is required for the South Carolina Circuit Court to exercise jurisdiction.

 We start with the premise that our state court's jurisdiction is general, derived exclusively from article V, section 11 of the South Carolina Constitution, not from federal law. S.C. Const. art. V, § 11; *see, e.g., Fairfax Countywide Citizens Ass'n v. Fairfax County*, 571 F.2d 1299, 1304 (4th Cir.1978) (indicating that unlike federal courts, state courts are courts of general jurisdiction). On the other hand, the jurisdiction of federal courts is limited to that expressly authorized by the United States Constitution or statute enacted by Congress pursuant thereto. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005); *Victory Carriers Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971) ("The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.") (internal citation and quotation marks omitted); U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."); *see* The Federalist No. 82, at 515–16 (Alexander Hamilton) (Wright ed., 2002) (considering the federal government has only the power exclusively delegated to it, it stands as a "rule" that "the State courts will retain ... jurisdiction[,] ... unless it appears to have been taken away in one of the enumerated modes"); Thus, unless otherwise prohibited by statute, a state court's jurisdiction is limited only by the federal court's proper

5. The exercise of mandamus power is, by its very nature, not an exercise of the court's jurisdiction over the case and controversy.

exercise of jurisdiction over a case pursuant to Congressional act—which according to Fourth Circuit jurisprudence in *Lowe,* ceased upon entry of the remand order.[6]

█ In this regard, the distinction between the majority and minority views becomes significant. Section 1446(d) provides a prohibition on state action in that once removal is properly effectuated, "the State court *shall proceed no further unless and until* the case is remanded." (emphasis added). Section 1447(c) states: "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court *may* thereupon proceed." (emphasis added). Naturally, if a federal court takes the majority view, making the remand dependent upon the mailing, the case is remanded and the order is mailed at the same point in time. Therefore, the lack of a mailing forecloses state court jurisdiction not because a state court should interpret section 1447(c) to provide the state may *only* proceed upon the mailing but because section 1446(d) prohibits state action until remanded. However, under the minority view, this is not the case as a remand does not require the mailing. Thus, in this circuit, a state court exercising jurisdiction over a case upon entry of remand neither imposes on federal jurisdiction nor violates these federal jurisdiction provisions.

Similarly, the states that have confronted this issue recognize the significance of the distinction between the majority and minority view.

In the cases applying the majority view, the revesting of jurisdiction occurs on the mailing because the finality of the remand and accompanying loss of federal jurisdiction requires the same. *See, e.g., Nixon v. Moore,* 108 S.W.3d 813, 817–18 (Mo.Ct.App.2003) (adopting the majority approach that the mailing is the operative event at which jurisdiction switches, but recognizing the minority reaches a different result); *Quaestor Invs., Inc. v. State of Chiapas,* 997 S.W.2d 226, 228 (Tex.1999) (noting that "[i]n answering the question of when a

---

6. For this reason, we disagree with the dissent's indication that we must interpret section 1447(c), as to do so in light of *Lowe's* interpretation of when federal jurisdiction ends under that section, we must invariably presume that our jurisdiction is derived from that federal statute rather than limited by it.

jurisdictional transfer occurs between federal and state court, most courts[ ] . . . interpret[ Section 1447(c) ] . . . to mean that the federal court loses jurisdiction once the federal court clerk has mailed a certified copy" but others, particularly the Fourth Circuit in *Lowe*, take an opposite view). However, the same rationale compels a different result under the minority view. *See Nixon*, 108 S.W.3d at 817 (citing *Lowe* for the proposition that a "few federal [circuits] have reached [a minority approach] . . . holding that jurisdiction transfers back to the state as soon as an order of remand is entered"); *Quaestor*, 997 S.W.2d at 228 (stating that *Lowe* "hold[s] that jurisdiction returns to the state court when the district court enters the remand"). Thus, whether the mailing of the certified copy is required to revest jurisdiction is simply a product of what interpretation is employed to determine when the federal court loses jurisdiction.[7]

■ Thus, the minority view accepts that the "require[ment that] the clerk of the district court [ ] mail a certified copy of the remand order to the clerk of the state court, is *not jurisdictional.*" *Int'l Lottery, Inc. v. Kerouac*, 102 Ohio App.3d 660, 657 N.E.2d 820, 823 (1995) (emphasis added) (citing *Van Ryn v. Korean Air Lines*, 640 F.Supp. 284 (C.D.Cal.1985) (standing for the proposition that entry of remand divests the federal court of jurisdiction notwithstanding the failure of the clerk to send a certified copy)); *see Albuquerque*, 889 P.2d at 206 (holding "the actions of a federal judge in signing and entering a remand order authorize subsequent state court actions even when the federal court clerk fails to mail the remand order to the clerk of the state court"); *see also Lowe*, 102 F.3d at 735 (" 'Logic also indicates that it should be the action of a court (entering the order of remand) rather than the action of a clerk (mailing a certified copy) of the order that should determine *vesting* of jurisdic-

7. We are aware of no jurisdiction that has taken the position that neither the state nor federal court has jurisdiction over a case. Further, it is not inconsistent with our federalist form of government to allow a state court to exercise its general jurisdiction when a federal court has finally decided its Congressionally authorized jurisdiction has ceased. *See Lowe*, 102 F.3d at 735 ("Removal in diversity cases, to the prejudice of state court jurisdiction, is a privilege to be strictly construed[.]") (quoting *In re La Providencia Dev. Corp.*, 406 F.2d 251, 252 (1st Cir.1969)).

tion' ") (quoting *Van Ryn*, 640 F.Supp. at 285) (emphasis added). In light of the Fourth Circuit having taken the minority approach, we must agree that the duty to send the mailing is not a jurisdictional requirement but a procedural one. Therefore, we find the South Carolina Circuit Court did not act without subject matter jurisdiction.

 This is bolstered by the fact that even in jurisdictions requiring the mailing for finality of the remand, the same is not necessarily required for the state to exercise jurisdiction. For instance, in *Nixon* the Missouri Court of Appeals recognized:

The state court may not be immediately notified by the federal court of the order of remand. Counsel, of course, are promptly notified of the order of remand, and often counsel will, in the interest of saving time, notify the state court and proceed in the interim with the state court action. *There is nothing in the federal statutory scheme prohibiting the parties from proceeding at that point.*

*Nixon*, 108 S.W.3d at 817 (emphasis added).[8] Thus, although requiring the mailing to make the remand order final, the same is not an indispensable jurisdictional requirement. *See Bacon v. Dir. of Revenue, State of Mo.*, 948 S.W.2d 266, 267 (Mo.Ct.App.1997) ("Subject matter jurisdiction cannot be conferred by ... consent, and the lack thereof cannot be waived."). With nothing in the federal statutory scheme to prohibit this, the same would hold true in South Carolina, supporting our disinclination to see the mailing requirement as jurisdictional. *See In re Nov. 4, 2008 Bluffton Town Council Election*, 385 S.C. 632, 636, 686 S.E.2d 683, 686 (2009) ("The lack of subject matter jurisdiction may not be waived, even by consent of the parties....").

 Because we find the mailing requirement is procedural not jurisdictional, the issue is not properly before this court as a result of Hulsey's failure to timely object. *See Beaufort*

---

8. This statement recognizes that a state court, as opposed to a federal court, confronts whether the exercise of jurisdiction is prohibited by federal statute, not proscribed by it. Similarly it undermines the notion that the statement in section 1447(c): that once a certified copy is mailed "[t]he State court *may* thereupon proceed," operates as an absolute prohibition on state action. (emphasis added).

*County v. Butler*, 316 S.C. 465, 467, 451 S.E.2d 386, 387–88 (1994) (stating "a procedural right may be waived ... [and a] party who fails to object to the trial of a case ... cannot later assert the trial court erred in trying the case ..."); *Doe v. S.B.M.*, 327 S.C. 352, 356, 488 S.E.2d 878, 880 (Ct.App.1997) (stating that "[t]he duty is on the litigant to make a timely objection in order to preserve the right to review ... [and] ... [a] contemporaneous objection is required to properly preserve an error for appellate review"); *In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d 729, 732 (2004) ("In order to preserve an issue for appeal, it must be raised to and ruled upon by the trial court.").[9]

Further, to warrant reversal a party must demonstrate the alleged procedural failure caused him prejudice. *See Chastain v. Hiltabidle*, 381 S.C. 508, 519, 673 S.E.2d 826, 831 (Ct.App.2009) (stating in order to demonstrate prejudice from procedural non-compliance, a party must establish it "would have done something different" had procedure been followed). Hulsey has failed to demonstrate that he was prejudiced by the absence of the certified copy. Here, Hulsey cannot, and does not, maintain notice was insufficient. The

9. The dissent posits that our distinction between a jurisdictional requirement and a procedural one is irrelevant and that we erroneously suggest the issue is not preserved for appeal because it was not raised before the judgment was entered. To the contrary, it is precisely because of the rules of issue preservation that the distinction is not only relevant but imperative. The only question we confront in this case is whether the action of the trial court is void for lack of jurisdiction, which can be raised at *any time*. However, the dissent elects not to squarely answer this question, instead finding the judgment void because the trial court lacked the "power to proceed" with the case under the federal statute. Because it is the only issue before this court, we must presume that this alleged powerlessness is due to a lack of subject matter jurisdiction. To the extent the dissent suggests the circuit court is powerless to proceed for any reason other than a lack of subject matter jurisdiction, the issue is not properly before this court. Further, the dissent's analogy to the bankruptcy code is misplaced. Notwithstanding the manifest dissimilarities between the realm of bankruptcy law and this case, the federal jurisdictional statutes at issue here do not provide for a stay. The concept is also not analogous to this case as a stay, by definition and nature, operates only as a suspension of jurisdiction, not a termination. *Contra Davis*, 267 S.C. at 511, 229 S.E.2d at 848 ("[O]nce removal proceedings to federal court are fulfilled and requisite notice accomplished, the State court loses all jurisdiction in the matter.").

record makes clear that the Charleston County Clerk of Court received notice of a final and unappealable order of remand on July 21, 2006, and that on July 27, 2006, she mailed notice that she received and entered this final and unappealable order to all parties, just as she would have done had she received of a certified copy of the order.

Moreover, Husley personally received notice. The notice sent to Hulsey from the Charleston County Clerk makes no indication of whether the notice of remand it received was certified or not. Consequently, Hulsey's notice was not impacted by the fact that the Charleston County Clerk did not receive a certified copy of the order. Further, pursuant to Section 5 of the Policies and Procedures for the electronic case filing system (ECF) employed in the federal court, by removing the case Hulsey agreed to receive notice of entry of any order or judgment through electronic transmittal. Thus, in addition to notice from the state court, Hulsey had notice from the federal court of the entry of the final and unappealable remand order and consequently was not prejudiced.

Accordingly, the South Carolina Circuit Court did not act without subject matter jurisdiction, and Hulsey was not otherwise prejudiced by the Federal Clerk's failure to send a certified copy of the order of remand.[10]

## II. Entry of Default

Hulsey argues the trial court erred in failing to set aside entry of default because (a) the answer was timely or (b) good cause existed to set aside the entry of default under Rule 55(c), SCRCP. We disagree.

---

**10.** Respectfully, we disagree with the dissent's "summary of the rules that apply to remand in the Fourth Circuit." We find these conclusions irreconcilable with the holding of *Lowe* and contrary to the expressed rational of both *Lowe* and *Bryan*. Similarly, we find these rules to be contrary to the reasoning and holdings of the state courts that have confronted the issue. Finally, from a practical perspective, we find the summary illogical as it proposes to create (1) a scenario in which a state court is permitted to resume action on a case even though the remand order is appealable and remains subject to the federal court's jurisdiction, and (2) a scenario that denies a state court jurisdiction over a matter in which federal jurisdiction has been terminated, and a final and unappealable order has been issued.

As to the issue of whether the answer was timely filed, Hulsey points out this is an issue of interpretation of a rule or statute and is therefore reviewed de novo. *See Catawba Indian Tribe of S.C. v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007) (stating the interpretation of a statute is a question of law, which the appellate court is free to decide with no particular deference to the trial court). Further, our standard of review leaves the decision to set aside an entry of default within the sound discretion of the trial court, which we will not reverse absent an abuse of discretion. *Stark Truss Co. v. Superior Const. Corp.*, 360 S.C. 503, 508, 602 S.E.2d 99, 101 (Ct.App.2004). Such an abuse of discretion occurs when the decision is based upon an error of law or when the order is without evidentiary support. *Id.*

### a. Timeliness of the Answer

In order to find the August 29 answer was timely Husley urges this court to adopt a rule that the thirty-day time period in which to answer starts over upon remand.[11] We are not inclined to adopt such a rule.

Rule 12(a), SCRCP, provides: "A defendant shall serve his answer within 30 days after the service of the complaint upon him[ ]...." However, federal rules provide "[a] defendant who did not answer [in state court] before removal must answer ... within the longest of ...:" (A) twenty days after being served or otherwise receiving the initial pleading or (B) within five days after notice of removal is filed. Rule 81(c)(2), FRCP.

In this case, Hulsey removed fourteen days after being served. Thus, although under Rule 12(a), SCRCP, he was entitled to another sixteen days to answer, by choosing to remove the case to federal court, he willfully subjected himself to the shortened time period of Rule 81(c)(2), FRCP—providing he must answer within six days (twenty days after being served). However, in the seventy-six days between removal and the entry of remand, Husley neglected to answer.

Initially, we find no authority in this state to support the position that a removing party is entitled to a fresh thirty days to answer a complaint upon remand. Neither did the trial

---

11. Hulsey avers jurisdiction has not yet revested in the state court and maintains this as an alternative position.

court. Rather, looking at both the federal rules and state rules, in the exceptionally rare circumstance in which a case would be remanded to the state court before an answer was due pursuant to Federal Rule 81(c)(2), a plain reading of South Carolina Rule 12(a) would require an answer within thirty days of service. However, seemingly giving Hulsey the benefit of the doubt, the trial court determined that because the state court is to proceed as if no removal had been attempted, removal to federal court tolls the thirty day time period and therefore, upon remand Hulsey should be allowed the remainder of any unexpired time.[12] *See State v. Columbia Ry., Gas & Elec.*, 112 S.C. 528, 537, 100 S.E. 355, 357 (1919) (stating that upon remand it is the duty of the state court to proceed as if no removal had been attempted).

In this case, because Hulsey failed to answer under the plain reading of either Rule 12(a), SCRCP, or Rule 81(c)(2), FRCP; or under the more liberal approach provided by the trial court, it is of no consequence which approach we would adopt. Therefore, we are not occasioned to opine on the more acceptable method.[13] It suffices that we find no indication that a party is entitled to a fresh thirty-day period upon remand. Accordingly, we are disinclined to adopt a rule allowing the same. Such action is not the province of this court, but that of our legislature or supreme court.

### b. Rule 55(c)

Hulsey next argues the trial court erred in failing to set aside the entry of default under Rule 55(c), SCRCP. We disagree.

The issue before this court is not whether we would find good cause, but whether the decision to deny the motion to set aside default is supportable by the evidence and not controlled by an error of law. *Williams v. Vanvolkenburg*, 312 S.C. 373, 375, 440 S.E.2d 408, 409 (Ct.App.1994). A

---

12. This amounted to sixteen days after the remand because fourteen days had elapsed prior to removal.

13. The inquiry of whether failure to comply with Rule 81(c)(2), FRCP, would support entry of default in state court if the case is remanded unanswered appears novel in this state. However, we need not address it.

motion to set aside entry of default under Rule 55(c) is addressed to the sound discretion of the trial court. *Id.*

Under Rule 55(c), the entry of default may be set aside for "good cause shown," which is a less stringent standard than the excusable neglect standard of Rule 60(b). *Sundown Operating Co. v. Intedge Indus. Inc.*, 383 S.C. 601, 607, 681 S.E.2d 885, 888 (2009).[14] The good cause standard of Rule 55(c) requires, as a threshold burden, a party to put forth "an explanation for the default and give reasons why vacation of the default entry would serve the interests of justice." *Id.* "Once a party has put forth a satisfactory explanation ... the trial court must also consider [the *Wham*[15] factors]: (1) the timing of the motion for relief; (2) whether the defendant has a meritorious defense; and (3) the degree of prejudice to the plaintiff if relief is granted." *Id.* at 607–08, 681 S.E.2d at 888. However, a trial court need not make specific findings of fact for each factor if sufficient evidence supports a trial court's determination that no reasonable explanation exists for vacation of default. *Id.*

In this case, the trial court held that because "there appears ... to be no reasonable basis for [Hulsey's] assumption that the [thirty] day time to file an answer starts completely anew upon remand[,] ... no good cause has been demonstrated...." While we appreciate the trial court did not have the benefit of the *Sundown* opinion, we find *Sundown* did nothing to abate the discretion to which a trial court is entitled in ruling on a Rule 55(c) motion. Nor did it change the standard this court applies when reviewing such a decision. What constitutes a satisfactory explanation that serves the interests of justice remains within the sound discretion of the trial court.[16]

---

14. Although the South Carolina Supreme Court decided this case during the pendency of this appeal, Hulsey notified this court via writing of the intent to rely on this authority.

15. *Wham v. Shearson Lehman Bros.*, 298 S.C. 462, 465, 381 S.E.2d 499, 502 (Ct.App.1989).

16. As our colleague in the dissent points out and the trial court's ruling indicates: in practice, both the bench and bar have been aware that the explanation for the default is significant. *See New Hampshire Ins. Co. v.*

■ In South Carolina, negligence on the part of an attorney is imputable to the client and will not be the basis of finding good cause to set aside entry of default. *See Vanvolkenburg,* 312 S.C. at 375, 440 S.E.2d at 410 (indicating, prior to *Sundown,* that the imputed negligence of an attorney to a defaulting litigant is not good cause). Similarly, our supreme court has recognized subsequent to *Sundown* that the good cause standard of Rule 55(c), encompasses a degree of reasonableness. *See Richardson v. P.V., Inc.,* 383 S.C. 610, 618–19, 682 S.E.2d 263, 267 (2009) (finding, after *Sundown,* that negligence on the part of an insurance company or attorney will be imputed to a defaulting litigant and negligence does not constitute good cause to relieve an appellant from entry of default); *see also* Black's Law Dictionary 1133 (9th ed.2009) (defining negligence as the failure to act reasonably under a specific set of circumstances). It stands, therefore, that because unreasonable conduct does not amount to good cause, an unreasonable explanation for defaulting is not a satisfactory explanation that serves a sufficient interest of justice.[17]

In the case at bar, although the supreme court had not yet issued the *Sundown* opinion, the trial court nonetheless addressed Hulsey's explanation of default and specifically found it unreasonable. We find the record supports the finding that Husley's explanation for default is unreasonable.[18] *Vanvolk-*

---

*Bey Corp.,* 312 S.C. 47, 50, 435 S.E.2d 377, 379 (Ct.App.1993) (indicating the reason for failure to act is relevant under a Rule 55(c) analysis).

17. We recognize the dissent's position that reasonableness is not required of the excuse itself but merely a factor to be considered in a "broader inquiry" of whether the vacation serves the interests of justice. While this is certainly a mode of analysis within the trial court's discretion, in light of our standard of review, whether the trial court finds vacation does not serve an interest of justice because the excuse is unreasonable or finds the excuse is unreasonable because vacation does not serve an interest of justice, so long as supported by the evidence, is a distinction without a consequence.

18. Notwithstanding, we respectfully disagree that good cause likely existed in this case. Hulsey's contempt for the rules of procedure both in federal court and state court, indicates this was not a "failure at an attempt" but rather a "failure to attempt" an answer. This issue would not have arisen had the rules been followed. Thus, we suggest there is ample "guidance" for Hulsey to know a party is not entitled to 130 days to answer.

*enburg,* 312 S.C. at 375, 440 S.E.2d at 409 (stating the "issue before this [c]ourt ... is not whether we believe good cause existed ... [but] whether the trial court's determination is supported by the evidence"). Further, we are aware of no authority either prior to or after *Sundown* that compels this court to find it is not within the trial court's discretion to deny a Rule 55(c) motion for an unreasonable failure to answer. Accordingly, we find the trial court did not abuse its discretion.

## III. Default Damages Trial

Hulsey's allegation of error as to the damages trial is threefold. He argues (a) the process employed by South Carolina courts is unconstitutional and deprives a default defendant of due process; (b) specifically as to this case, the trial court erred in allowing introduction of new allegations during the damages hearing, in the form of testimony about a link on Hulsey's website to the slanderous article; and (c) the trial court erred by improperly commenting on the facts.

 This court's standard of review for the grant or denial of a motion for a new trial extends substantial deference to the trial court. *Vinson v. Hartley,* 324 S.C. 389, 404, 477 S.E.2d 715, 723 (Ct.App.1996). The trial court's decision will not be disturbed on appeal unless the finding is wholly unsupported by the evidence or based on an error of law. *Stevens v. Allen,* 336 S.C. 439, 446, 520 S.E.2d 625, 628–29 (Ct.App.1999).

### a. South Carolina's default damages procedure

Hulsey argues the process employed by the State of South Carolina during a default damages hearing is unconstitutional. We must disagree.

 During a default damages trial, the defendant's participation shall be limited to cross-examination and objection to the plaintiff's evidence. *Roche v. Young Bros. of Florence,* 332 S.C. 75, 81–82, 504 S.E.2d 311, 314 (1998); *Howard v. Holiday Inns, Inc.,* 271 S.C. 238, 241, 246 S.E.2d 880, 882 (1978); *Doe v. SBM,* 327 S.C. 352, 356, 488 S.E.2d 878, 881 (Ct.App.1997); *Ammons v. Hood,* 288 S.C. 278, 282, 341 S.E.2d 816, 818 (Ct.App.1986).

On appeal, Hulsey provides no controlling authority[19] for his position that this court can, or should, diverge from longstanding rules established by our supreme court. Accordingly, we cannot and do not find the default damages hearing to be unconstitutional.

### b. Introduction of testimony about the website link

Hulsey maintains that the entry of default is tantamount to admission of the allegations of the complaint, but nothing more. *See Wiggins v. Todd,* 296 S.C. 432, 435, 373 S.E.2d 704, 705–06 (Ct.App.1988) (stating that when a defendant is in default, the plaintiff's right to recover is circumscribed by the complaint drafted). Therefore, Hulsey alleges the trial court erred in allowing Limehouse to testify to new allegations outside the confines of the complaint, particularly about a link on Hulsey's website to the slanderous newspaper article. However, an allegation of error as to the introduction of evidence during a default damages proceeding will not be preserved for appellate review absent a contemporaneous objection. *SBM,* 327 S.C. at 356, 488 S.E.2d at 881.

Here, Hulsey failed to object to any testimony regarding the publication or link on the website. Accordingly, this allegation of error is not preserved for our review.

### c. Trial court commenting on the facts

Generally a "trial [court] should not intimate to the jury any opinion on the facts of a case, whether intentionally or unintentionally." *Sierra v. Skelton,* 307 S.C. 217, 225, 414 S.E.2d 169, 174 (Ct.App.1992).

In this case, during deliberations, the jury sent out a question inquiring whether "the link to the April 24, 2004, article [was] still on ... Hulsey's website? [And i]f not, when was it removed?" The trial court responded by informing the

---

19. Hulsey cites *Mathews v. Eldridge,* 424 U.S. 319, 333–34, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for the proposition that due process requires a meaningful opportunity to be heard. Hulsey also cites to two appellate decisions from the foreign jurisdictions of Florida and North Carolina to support his argument to change the default damages procedure in South Carolina, specifically as to punitive damages.

jury that there was testimony that as of the Monday of trial, the link remained on the website.

Hulsey argues this "constitute[s] an improper comment on the facts." Further, Hulsey argues "even more inexplicably, Limehouse was allowed to testify that the link on the website was a violation of a court order while Hulsey was precluded from introducing the very court order ... which indisputably evidences that there was no prohibition from mentioning the case on the firm website." Initially, Hulsey made no objection to the testimony regarding the court order, and under the default damages procedure, would have been free to cross-examine Limehouse on this matter. Furthermore, Hulsey does nothing to demonstrate how the trial court's answer to the jury's inquiry demonstrated an imparting of opinion on the facts of the case. Accordingly, we find no error.

## IV. Punitive Damages

Hulsey argues the award of punitive damages was founded on trial court error and constituted a denial of due process. Hulsey presents four separate arguments on this issue: (a) due process demands a default litigant be given an opportunity to defend punitive damages, (b) the jury should have been instructed that it could return an award of no punitive damages, (c) the trial court allowed and actually invited the jury to consider matters not proper for their consideration in awarding punitive damages, and (d) the trial court erred in confirming the award.

Generally, the trial court's decision on a motion for a new trial will not be disturbed on appeal unless the finding is wholly unsupported by the evidence or based on an error of law. *Stevens v. Allen*, 336 S.C. 439, 446, 520 S.E.2d 625, 628–29 (Ct.App.1999).

### a. Due Process

Hulsey maintains employing South Carolina's procedures for a default damages hearing in a case in which punitive damages are sought amounts to a constitutional due process violation. Hulsey further argues this due process violation was compounded by the facts that the trial court failed to exercise its obligation to independently make a

threshold determination of whether the defendants' conduct rose to the level of warranting punitive damages, and that Limehouse was allowed to go into matters beyond the bounds of the complaint.

Initially, Hulsey cites no authority to support the proposition that South Carolina should employ a different default damages procedure for punitive damages than for actual damages. *See Roche,* 332 S.C. 75, 504 S.E.2d 311 (making no distinction on appeal between punitive damages and actual damages during a default damages trial).

As to the trial court's failure to make a threshold determination that Hulsey's conduct warranted punitive damages, this issue was specifically addressed when the trial court denied Hulsey's motion for a directed verdict on punitive damages. Although it is unclear from the briefs on appeal whether Hulsey challenges this ruling on appeal, to the extent that he may be alleging the trial court improperly denied the directed verdict on the issue of punitive damages, we briefly address the issue.

■■■ In reviewing the denial of a motion for a directed verdict, this court applies the same standard as the trial court, viewing the evidence and the inferences in the light most favorable to the non-moving party, and will not reverse the denial unless there is no evidence to support the ruling. *All Saints Parish Waccamaw v. Protestant Episcopal Church in Diocese of S.C.,* 385 S.C. 428, 441–42, 685 S.E.2d 163, 170 (2009).

When viewed in the light most favorable to Limehouse, there exists evidence which supports submitting the issue of punitive damages to the jury for consideration, including the intentional nature of the action, Hulsey's degree of culpability, and his awareness of the conduct. Accordingly, to the extent Hulsey may be challenging this ruling, we find no error.

### b. Instruction on punitive damages

■■■ Hulsey next argues the trial court erred by telling the jury it was required to award punitive damages. We find no such instruction.

Punitive damages may be awarded, in the interest of society in punishing or deterring the conduct, or vindicating a private right, when the plaintiff proves entitlement to such damages by clear and convincing evidence. S.C.Code Ann. § 15–33–135 (2005) (stating punitive damages must be proved by clear and convincing evidence); *Austin v. Specialty Transp. Servs., Inc.,* 358 S.C. 298, 312, 594 S.E.2d 867, 874 (Ct.App.2004) (indicating punitive damages may be awarded for various reasons).

Generally, this court will not reverse the decision of the trial court as to a particular jury instruction absent a prejudicial abuse of discretion. *Cole v. Raut,* 378 S.C. 398, 405, 663 S.E.2d 30, 33 (2008). A trial court abuses its discretion in this regard when the ruling is not supported by the evidence or is based on an error of law. *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000).

Hulsey argues the trial court instructed the jury it had to award punitive damages and submitted a jury verdict form that required an award of punitive damages. However, upon review of the verdict form we see nothing that required the jury to return punitive damages. Furthermore, Hulsey does not cite, or otherwise bring to this court's attention, any specific language used by the trial court to support that it instructed the jury it *had* to award punitive damages.

Initially, the trial court instructed the jury: "Punitive damages can only be awarded where the plaintiff proves by clear and convincing evidence that the defendant's actions were willful, wanton, malicious, or in reckless disregard for the plaintiff's rights." Although not specified, the basis for Hulsey's allegation of error is presumably premised upon the use of the word "duty" in a single statement in an otherwise lengthy and thorough instruction in which the trial court stated: "Under proper allegations, a[sic] plaintiff proves by clear and convincing evidence a willful, wanton, reckless, and malicious violation of his rights. It is not only the right, but the duty of the jury to award punitive damages." However, the trial court's very next sentence clarified the use of this term, stating: "Accordingly, *if* you should find that the plaintiff is entitled to recover punitive damages in addition to actual damages, it would be your duty to include such damages in your verdict and award such an amount as you may deem

reasonable and proper in light of the facts and circumstances." (emphasis added).

Upon review of the record we find the trial court properly instructed the jury on the law. *See* S.C.Code Ann. § 15–33–135 (2005) (stating punitive damages must be proved by clear and convincing evidence). The trial court did not instruct the jury it *had* to award punitive damages, but simply instructed the jury that *if* it found the plaintiff entitled to punitive damages it was their duty to determine the amount to which the Limehouse was entitled. Therefore, we find no error.

### c. *Matters not appropriate for consideration of punitive damages*

Next, Hulsey alleges his constitutional due process rights were violated because of the trial court's and Limehouse's repeated references to the default, arguing this referencing insinuated that the jury should punish Hulsey for his failure to follow the procedural rules. Further, Hulsey alleges this error was compounded by the trial court allowing Limehouse's wife to testify as to the link on Hulsey's website, as well as to statements about how the ordeal affected Limehouse's family. Finally, Hulsey argues the trial court erred in allowing the jury to consider the settlement of the RICO case, and admitting testimony as to Hulsey's net worth. We disagree.

First, Hulsey does not cite any authority to support the position that discussion of the default would support a finding that due process had been denied. Further, we find no indication on the record that the trial court suggested or otherwise implied that Hulsey's failure to answer should support the imposition of punitive damages.

Second, as to the allegations pertaining to the website link, as noted Hulsey made no objection to this during the damages trial and consequently the issue is not preserved for our review. *See SBM*, 327 S.C. at 356, 488 S.E.2d at 881 (indicating an allegation of error as to the introduction of evidence during a default damages proceeding will not be preserved for appellate review absent a contemporaneous objection to the same).

Third, Hulsey contends it was error to allow Limehouse's wife to mention the impact of the slander on his family

because pursuant to *Philip Morris USA v. Williams*, 549 U.S. 346, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007), punitive damages cannot be imposed to punish a defendant for harm visited upon others. However, at trial, this argument was specifically presented as one of relevance.

■■■ Evidence is relevant, and generally admissible, if it has any tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence. Rules 401, 402, SCRE. The introduction of evidence is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Richardson v. Donald Hawkins Const., Inc.*, 381 S.C. 347, 352, 673 S.E.2d 808, 811 (2009); *Jamison v. Ford Motor Co.*, 373 S.C. 248, 268, 644 S.E.2d 755, 765 (Ct.App.2007). In this case, the trial court found the testimony to be relevant because it was "within the scope of how it affected [Limehouse], and his family relationships." We agree that the impact on Limehouse's immediate family bears on the extent of the impact he suffered, and accordingly we find no abuse of discretion.

■■■ Finally, Hulsey argues the trial court erred in allowing the jury to consider the settlement of the prior RICO case as well as erroneous testimony that Hulsey's net worth was in excess of $81 million. Initially, contrary to Hulsey's position that Limehouse was able to paint him as a "greedy hotshot lawyer," Limehouse's own witness, John Massalon, conceded he was aware Hulsey was pro bono counsel on the previous RICO case. Furthermore, the record does not indicate any objection was made to the testimony of Bank of America employee Bernadette DeWitt when she testified as to Hulsey's net worth. The evidence bears out the financial declaration on which she relied was certified as a true, complete, and accurate statement of Hulsey's financials and as such, any misinformation presented on this issue was the result of Hulsey's own misrepresentation. Accordingly, we find no error.

### d. Confirmation of punitive damages.

Finally, Hulsey argues the trial court erred in confirming the award of punitive damages. We disagree.

Our supreme court recently indicated an appellate court's scope of review to be de novo. *Mitchell v. Fortis Ins. Co.,* 385 S.C. 570, 583, 686 S.E.2d 176, 185, 183 (2009).

 The *Fortis,* court consolidated the post judgment due process analysis for punitive damages. In reviewing an award of punitive damages, we consider (1) the reprehensibility of the conduct, (2) the disparity or "ratio" between actual harm and the punitive damage award, and (3) the comparative penalties. *Fortis,* 385 S.C. at 587–89, 686 S.E.2d at 185–86.

### 1. Reprehensibility

 In considering reprehensibility, a court should consider whether:

(i) the harm caused was physical as opposed to economic; (ii) the tortious conduct evinced an indifference to or a reckless disregard for the health or safety of others; (iii) the target of the conduct had financial vulnerability; (iv) the conduct involved repeated actions or was an isolated incident; and (v) the harm was the result of intentional malice, trickery, or deceit, rather than mere accident.

*Id.* at 185, 686 S.E.2d at 587. This encompasses the defendant's culpability, the duration of the conduct, the defendant's awareness or concealment, and the existence of similar past conduct. *Id.* at 185 n. 7, 686 S.E.2d at 587 n. 7.

Although the harm here was not physical, and posed no threat to health or safety, the evidence indicates Hulsey, through involvement in the underlying RICO action, was aware of the nature and vulnerability of Limehouse's business. Also, although the statements were made in a single incident, because the statements were made to the press, the evidence shows that the circumstances clearly indicated that the statements would be publicly reported and widely disseminated. Finally, this conduct was not the result of accident or inadvertence. The statements were contemplated, intentionally made, and coincided precisely with a filing of a lawsuit against Limehouse. Accordingly, our review of the evidence convinces us that Hulsey's conduct was sufficiently reprehensible to support punitive damages.[20]

---

**20.** The trial court specifically noted the statements were intentionally made, the award would deter similar conduct in the future, the award

## 2. Ratio

The courts of this state have affirmed punitive damage awards in excess of six times actual damages. *See James v. Horace Mann Ins. Co.*, 371 S.C. 187, 196, 638 S.E.2d 667, 672 (2006) (affirming an award of punitive damages of 6.82 times actual damages); *Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 11, 466 S.E.2d 727, 733 (1996) (affirming an award of punitive damages roughly twenty-eight times actual damages). Similarly, the supreme court has modified awards to reflect a 9.2:1 ratio. *See Fortis*, 385 S.C. at 594, 686 S.E.2d at 188. Here, the punitive damage award was slightly above twice actual damages. Accordingly, we do not find such an award to violate due process.

## 3. Comparative Penalty

In looking to comparative cases, we find that in similar matters, our supreme court has upheld punitive damages which were over ten times that of actual damages. *See, e.g., Weir v. Citicorp Nat'l Servs., Inc.*, 312, S.C. 511, 518, 435 S.E.2d 864, 869 (1993) (affirming an award of $275,000 in punitive damages, in a slander case, where actual damages were found to be $25,000). Accordingly, we find no error here.

## CONCLUSION

For the reasons above, the ruling of the trial court is

**AFFIRMED.**

HUFF, J., concurs.

FEW, C.J., dissents.

FEW, C.J., dissenting.

I disagree with the majority's analysis of Issues I and II, and therefore dissent. Because my position on either Issue I

---

was just over twice actual damages and was thus reasonably related to the actual harm suffered. The trial court also noted Hulsey was of the rare few who can afford to pay the award, and although South Carolina's procedure did not permit Hulsey to put forth evidence, the verdict remained reasonable.

or II would resolve this appeal, I would not reach Issues III and IV.

## I. Jurisdiction

Hulsey moved for a new trial and for relief from judgment on the ground that jurisdiction never re-vested in the state court after removal, and therefore federal law prohibited the state court from proceeding with the case. The plain language of 28 U.S.C. §§ 1446(d) and 1447(c) required that the motion be granted.

### a. The Plain Language of Sections 1446(d) and 1447(c)

Section 1446(d) provides that after an action has been removed to federal court "the State court shall proceed no further unless and until the case is remanded." A remand order based on a lack of subject matter jurisdiction, such as the remand order in this case, is governed by section 1447(c),[21] which requires that "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court." The next sentence of section 1447(c)—"The State court may thereupon proceed with such case"—is the key to this case. The word "thereupon" sets the point in time when the case is "remanded." Before a certified copy of the remand order is mailed, the state court may not proceed; afterwards, it may. The section 1446(d) prohibition of "shall proceed no further" remains in effect until the section 1447(c) requirement that a "certified copy of the order of remand shall be mailed" has been met. This plain language is all that is necessary to resolve this appeal. A certified copy of the order of remand was never mailed to the state court clerk. Under 28 U.S.C. §§ 1446(d) and 1447(c), therefore, the state court had no power to proceed. Because the state court acted when federal law prohibited it from doing so, the resulting judgment was void. The trial court's failure to grant relief from the judgment was error and must be reversed.

The majority takes the position that the mailing of a certified copy of the remand order does not determine the point in

---

21. Section 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

time when a state court may proceed after remand. Their position is based primarily on two grounds. First, the majority argues that the mailing of a certified copy of the remand order is not required in the Fourth Circuit under the authority of *In re Lowe*, 102 F.3d 731 (4th Cir.1996). Second, the majority argues that to the extent the requirement is applicable, it is procedural, and the right to enforce it has been waived in this case.

### b. *In re Lowe*

The question before the court in *Lowe* was different from the question we face. Thus, the rule announced there is not applicable here. The majority's argument that the mailing of a certified copy of the remand order is not required in the Fourth Circuit is based on the following passage from *Lowe:* "we hold that a federal court loses jurisdiction over a case as soon as its order to remand the case is entered. From that point on, it cannot reconsider its ruling even if the district court clerk fails to mail to the state court a certified copy of the remand order." 102 F.3d at 736. The majority has incorrectly framed the issue by relying on this passage.

The majority's argument begins by correctly recognizing that section 1446(d) allows the state court to proceed as soon as the case is "remanded." However, the majority incorrectly concludes that the above statement from *Lowe* answers the question of when that occurs. I agree that *Lowe* sets the point in time when the federal court may not reconsider a remand order. However, that ruling is based on the Fourth Circuit's interpretation of section 1447(d), not section 1446(d). Therefore, the majority is mistaken that *Lowe* sets the point in time when the case is remanded, and that it is not necessary to interpret section 1447(c) in order to determine when the state court may proceed. Rather, we are required to enforce the section 1447(c) requirement that a certified copy of the remand order be mailed before the state court may proceed.

A careful analysis of *Lowe* demonstrates that the question it answered was different. The plaintiff sued her employer and two of its managers in the state court of North Carolina. 102 F.3d at 732. After the defendants removed the case to federal

court, the plaintiff moved to remand. *Id.* A federal magistrate judge granted the motion on the grounds that the federal court lacked subject matter jurisdiction. 102 F.3d at 732–33, 736. The federal clerk mailed the order to the clerk of the state court, but the copy mailed was not certified. 102 F.3d at 733. Six months later, a different federal magistrate judge granted the defendants' motion to reconsider. *Id.* After the second magistrate denied two motions to remand, the plaintiff petitioned the Fourth Circuit for a writ of mandamus requiring the district court to return the case to the state court. *Id.* After concluding generally that remand orders issued for lack of subject matter jurisdiction are not reviewable, 102 F.3d at 733–34, the Fourth Circuit framed the specific issue before it as follows: "[t]he only question remaining, then, is to identify when a court's decision to remand becomes unreviewable." 102 F.3d at 734.

The court analyzed the question by focusing on 28 U.S.C. § 1447(d), and in particular the word "order."

Subsection 1447(d) provides only that a remand "order" may not be reviewed; it does not condition reviewability on any other event. Thus, the plain language of subsection (d) indicates that a court may not reconsider its decision to remand, as soon as it formalizes that decision in an "order."

102 F.3d at 734. The *Lowe* decision thus turns on the court's interpretation of the word "order" in section 1447(d) and not, as the majority claims, on the timing of "remanded" under section 1446(d). In fact, *Lowe* does not even mention section 1446. The court clarifies its reliance on section 1447(d) with the language "[1447(d)] does not condition reviewability on any other event." *Id.* This statement makes it clear that *Lowe* is not based on sections 1446(d) or 1447(c), which refer respectively to the events of "remanded" and "mailed." Therefore, the majority's contention that *Lowe* defines "remanded" is not correct.

Moreover, *Lowe* contemplates that the section 1447(c) requirement of a mailing remains a part of the process of remand. Noting that it has read sections 1447(c) and (d) independently, 102 F.3d at 734 n. 3, the court explains that section 1447(c) "directs the district court clerk to mail a 'copy' of the remand order to the state court, certainly implying that

the order itself, the document § 1447(d) tells us is unreviewable, is in existence before the time of the mailing." 102 F.3d at 734. If the Fourth Circuit's "minority" approach made the mailing required by section 1447(c) unnecessary, the *Lowe* court would have had no reason to provide this explanation that the section comes into play after the event of an "order" contemplated in section 1447(d).

The majority and I agree that the plain language "shall proceed no further" in section 1446(d) prohibits a state court from acting on a removed case until the case is "remanded." The question we face is when federal law sets that point in time, and thus removes the "shall proceed no further" prohibition. The answer to that question is not found in *Lowe*'s interpretation of section 1447(d), but in the plain language of sections 1446(d) and 1447(c).

### c. *Waiver*

The majority's second ground for its position is that the section 1447(c) requirement of mailing a certified copy is a procedural requirement rather than a jurisdictional one. The distinction is irrelevant in this case. Congress enacted a statute providing that when a case is removed to federal court the state court is prohibited from further action "unless and until the case is remanded." 28 U.S.C. § 1446(d). This prohibition may not be avoided by labeling the mailing requirement procedural. The prohibition is imposed by a federal statute and is likewise lifted only in accordance with federal statutes: 28 U.S.C. §§ 1446(d) and 1447(c). The question we face in this appeal requires us to interpret these statutes and apply their plain language to the facts of this case. *See Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 148, 694 S.E.2d 525, 530 (2010) ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, ... the court has no right to impose another meaning.").

The majority's ruling not only imposes another meaning on these statutes, but it also renders an entire sentence of the United States Code meaningless by eliminating the section 1447(c) requirement that the federal clerk mail a certified copy of the remand order. This court is not permitted to interpret

a statute so as to render a part of it meaningless. *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.,* 102 F.3d 712, 715 (4th Cir.1996) ("Absent clear congressional intent to the contrary, we will assume the legislature did not intend to pass vain or meaningless legislation."); *Duvall v. S.C. Budget & Control Bd.,* 377 S.C. 36, 42, 659 S.E.2d 125, 128 (2008) ("The Court must presume the Legislature intended its statutes to accomplish something and did not intend a futile act.").

By characterizing the mailing requirement as procedural, the majority has converted section 1447(c) to a notice statute, so that the requirement of mailing a certified copy can be ignored because, as the majority states, "Hulsey cannot, and does not, maintain notice was insufficient." I do not believe this court is free to be so loose with the requirements of federal law. If Congress intended that notice of a remand was sufficient to enable the state court to proceed, it could easily have drafted sections 1446(d) and 1447(c) accordingly.

The majority's waiver argument also suggests that the issue is not preserved for appellate review because it was not raised to the trial court before judgment was entered. The situation in which the federal removal statutes prohibit a state court from proceeding after a case is removed is analogous to the situation in which the federal bankruptcy stay prohibits a state court from taking action against a debtor who has filed a bankruptcy petition. *See* 11 U.S.C. § 362(a)(1) (2004 & Supp. 2010). In that instance, as in this one, the validity of a judgment entered in state court during the time in which federal law prohibits it can be raised at any time. *See Ex Parte Reichlyn,* 310 S.C. 495, 498–99, 427 S.E.2d 661, 663–64 (1993) (declaring a judgment void when the judgment was entered during the pendency of the bankruptcy stay).

### d. *Bryan v. BellSouth Communications, Inc.*

In support of their respective positions, Appellants and Respondent cite different clauses in the same footnote from the Fourth Circuit's second opinion in *Bryan v. BellSouth Communications, Inc.,* 492 F.3d 231 (4th Cir.2007) (*Bryan II* ).[22] As I will explain, the footnote supports the position I

---

**22.** The first opinion was *Bryan v. BellSouth Communications, Inc.,* 377 F.3d 424 (4th Cir.2004) (*Bryan I* ).

have taken in this dissent. To understand *Bryan II,* however, it is important to note that the remand order was not made pursuant to section 1447(c).[23] Instead, after dismissing two federal claims on the merits, the district court determined a third claim was not federal, declined to exercise supplemental jurisdiction over it, and remanded it to state court. *Bryan II,* 492 F.3d at 234–35; *Bryan I,* 377 F.3d at 425. Because the *Bryan* remand was not based on the lack of subject matter jurisdiction and therefore was not made pursuant to section 1447(c), any statement in *Bryan II* interpreting that subsection is technically dictum. However, both parties have cited *Bryan II* as authoritative, as has the majority. Mindful therefore of the admonition of former Chief Judge Sanders that "those who disregard dictum, either in law or in life, do so at their peril," I will give due regard to the footnote from *Bryan II. Yaeger v. Murphy,* 291 S.C. 485, 490 n. 2, 354 S.E.2d 393, 396 n. 2 (Ct.App.1987).

The footnote states:

A remand is effective when the district court mails a certified copy of the remand order to the state court, *see* 28 U.S.C.A. § 1447(c) (West 2006), *or,* if the remand is based on the lack of subject-matter jurisdiction or a defect in the removal process, when the remand order is entered....

*Bryan II,* 492 F.3d at 235 n. 1 (emphasis added). The disjunctive word "or" indicates that the purpose of the footnote is to differentiate between the two types of remand: those made pursuant to section 1447(c) and those made for some other reason. In particular, the footnote differentiates between the points in time when each is "effective" to allow the state court to proceed.[24] Citing to section 1447(c), which

**23.** Section 1447(c) applies to remands on the basis of a lack of subject matter jurisdiction or a defect in the removal procedure. As the Fourth Circuit pointed out in *Bryan I,* the district court "concluded that removal was proper because Bryan presented a federal question." 377 F.3d at 427. The Fourth Circuit's decision in *Bryan I* demonstrates that it agreed. "On appeal, we held that the remanded claim was a federal claim...." *Bryan II,* 492 F.3d at 234 (citing *Bryan I,* 377 F.3d at 432). Because the federal court had subject matter jurisdiction over the federal claims, the remand was not made pursuant to section 1447(c).

**24.** The court makes this differentiation in order to explain how the remanded state court proceedings and the appeal of the remand order

applies only to remand orders such as the one in this case, the first clause states the rule that the "remand is effective when the district court mails a certified copy of the remand order to the state court." The only situation in which the first clause of the footnote can be an accurate statement of law is when the statement is made to answer the precise question we face in this appeal—When does federal law remove the "shall proceed no further" prohibition so that a state court may proceed with a case after a remand made pursuant to 28 U.S.C. § 1447(c)? [25]

Finally, the text of *Bryan II* contains a statement that is contrary to the majority's interpretation of the footnote. Responding to a separate argument made by BellSouth, the court again described the point in time when the state court regained jurisdiction to proceed after the remand, and cited section 1447(c). In the parenthetical after the citation in which it explained the meaning of 1447(c), the court stated "providing that the state court may proceed with a case once the district court mails a certified copy of the remand order to the state court." 492 F.3d at 241. This is consistent with the plain language of the statutes and refutes the majority's interpretation of the footnote. Therefore, I interpret the footnote to include in its first clause the rule applicable to the issue we face in this appeal, and thereby to support my position that the federal clerk was required to mail a certified copy of the remand order to the state court clerk before the state court had jurisdiction to proceed.

### e. *Conclusion as to Jurisdiction*

Limehouse argues that the result of a straightforward interpretation of sections 1446(d) and 1447(c) under the circumstances of this case "makes no sense." The majority refers to

---

to the Fourth Circuit could proceed simultaneously. 492 F.3d at 235. In fact, the footnote appears at the end of this sentence in the text of the opinion: "While BellSouth's appeal was pending, Count A, which had been remanded to state court by the district court, was proceeding in state court." *Id.*

**25.** It is not possible to interpret the clause to apply to anything other than a section 1447(c) remand, not only because the clause cites to the section, but also because the mailing referred to is not required except when the remand is made pursuant to section 1447(c).

it as "jurisdictional limbo" and "jurisdictional hiatus." It is true that interpreting the statutes according to their plain meaning creates a scenario in which for some period of time neither the federal court nor the state court had the power to act. In most cases, however, this period is very brief; in any case it is a situation required by the plain language of federal statutes. Whenever the period becomes lengthy, as it did here, the federal court has the power to order its clerk to comply with the statute.[26]

I acknowledge that the result I propose appears at first to be harsh on the facts of this case. However, the section 1446(d) prohibition of "shall proceed no further" is absolute and contemplates no exceptions, even in the face of a harsh result. When the Legislative branch sets forth plain and unambiguous language in a statute, the Judicial branch is constrained to follow it. If the results are harsh, the Legislature may change the statute but the courts may not.[27] How-

---

26. While the federal court's remand order becomes final and unreviewable upon its filing, that event does not deprive the federal court of the power to order its clerk to complete the ministerial task of mailing a certified copy of the order to the state court clerk. *See Peacock v. Thomas*, 516 U.S. 349, 354, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) ("[A] federal court may exercise ancillary jurisdiction ... to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."). As a practical matter, an informal reminder to the federal clerk that a certified copy of the order had not been mailed would almost certainly have solved the problem. As a technical matter, the district court has mandamus power to compel its clerk to complete this ministerial task. This is, in fact, exactly what happened in *Lowe*. After the district court concluded there was no federal subject matter jurisdiction, the Fourth Circuit granted a writ of mandamus with instructions that the district court return the case to state court. 102 F.3d at 736. Given the substance of the Fourth Circuit's ruling that the district court's order remanding the case was unreviewable upon filing, the only task left to complete at that point was the ministerial task of sending a certified copy of the remand order to the state clerk.

27. Neither Limehouse nor the majority contends this is a situation in which the court may ignore a statute's plain meaning because to do so would yield an absurd result. *See Harris v. Anderson Cnty. Sheriff's Office*, 381 S.C. 357, 363 n. 1, 673 S.E.2d 423, 426 n. 1 (2009) ("One rule of statutory construction allows the Court to deviate from a statute's plain language when the result would be so patently absurd that it is clear that the Legislature could not have intended such a result.").

ever, the result I would reach is not harsh, nor even unfair. Limehouse's motion to remand to state court cites 28 U.S.C. § 1447(c) in its first sentence. Presumably his lawyers read the subsection, in which the requirement of mailing a certified copy of the remand order is plainly and unambiguously stated. Having cited the subsection to his advantage, it is not at all unfair that Limehouse be bound by the subsection when its plain terms work to his disadvantage.

In summary, the following rules apply to remand in the Fourth Circuit. A remand order based on some ground other than a lack of subject matter jurisdiction or a defect in the removal procedure, such as the decision not to exercise supplemental jurisdiction in *Bryan*, is reviewable, but the remand is effective allowing the state court to proceed as soon as the order is entered. On the other hand, a remand order which is based on a lack of subject matter jurisdiction, such as the order in this case and in *Lowe*, is unreviewable as soon as it is entered. However, this type of remand is effective such that the state court may proceed only after the federal clerk has complied with 28 U.S.C. § 1447(c) by mailing a certified copy of the remand order to the state court clerk. Because the federal clerk never complied with this requirement, the case was never "remanded," the state court had no power to proceed, and the resulting judgment entered in violation of federal law is void.

## II. Rule 55(c)

Hulsey moved for relief from default, which the trial court denied in an order filed February 7, 2007. In the subsequent decision of *Sundown Operating Co. v. Intedge Industries, Inc.*, 383 S.C. 601, 681 S.E.2d 885 (2009), our supreme court explained how the reasons for the default are to be analyzed in determining the existence of "good cause" under Rule 55(c). In light of *Sundown*, the analysis used by the trial court was controlled by an error of law. I would remand to the circuit court to reconsider the question of good cause under the standard set forth in *Sundown*.

### a. Good Cause under Rule 55(c) before Sundown

Our appellate courts have stated that Rule 55(c) is to be liberally construed to promote justice and dispose of cases on

the merits. *See, e.g., In re Moore,* 342 S.C. 1, 5 n. 7, 536 S.E.2d 367, 369 n. 7 (2000); *Melton v. Olenik,* 379 S.C. 45, 54, 664 S.E.2d 487, 492 (Ct.App.2008). In addition to this general guidance, our appellate courts have consistently listed three factors, which have become known as the *Wham* factors, that a trial court should consider in deciding whether good cause exists. *See Wham v. Shearson Lehman Bros.,* 298 S.C. 462, 465, 381 S.E.2d 499, 501–02 (Ct.App.1989). These factors, (1) the timing of the defendant's motion for relief, (2) whether the defendant has a meritorious defense, and (3) the degree of prejudice to the plaintiff if relief is granted, have been cited as the only factors to be considered in almost every opinion since *Wham* addressing good cause under Rule 55(c). *See, e.g., Richardson v. P.V., Inc.,* 383 S.C. 610, 616, 682 S.E.2d 263, 266 (2009) (decided after *Sundown* ); *Melton,* 379 S.C. at 55, 664 S.E.2d at 492.

Neither the general guidance to liberally construe Rule 55(c) in order to promote justice and dispose of cases on the merits nor the *Wham* factors instruct a trial court to require, or even to consider, the reason the party went into default. Nevertheless, trial courts and practicing lawyers have been generally aware that some explanation for the default is important to the analysis of good cause under Rule 55(c). In fact, in *New Hampshire Insurance Co. v. Bey Corp.,* 312 S.C. 47, 435 S.E.2d 377 (Ct.App.1993), this court quoted Dean Lightsey and Professor Flanagan in listing four factors "relevant under" Rule 55(c), including "the reasons for the failure to act promptly." 312 S.C. at 50, 435 S.E.2d at 379 (quoting Harry M. Lightsey & James F. Flanagan, *South Carolina Civil Procedure* 82 (1985)). Until *Sundown, Bey Corp.* was the only South Carolina appellate decision interpreting Rule 55(c) to have addressed the reasons for the default. However, other than to state it is a relevant factor, *Bey Corp.* gives no explanation as to how this fits into the analysis of good cause.

Therefore, at the time of the hearing and order on Hulsey's motion for relief from default, South Carolina law provided that the party seeking relief from the default must show good cause, and that in deciding the motion the judge should consider four relevant factors in light of the general guidance that Rule 55(c) is to be liberally construed to promote justice and dispose of cases on the merits. The factors were (1) the

timing of the defendant's motion for relief, (2) whether the defendant has a meritorious defense, (3) the degree of prejudice to the plaintiff if relief is granted, and (4) the reasons for the failure to act promptly.

### b. The Impact of Sundown

In *Sundown,* the supreme court began its analysis by discussing the reasons for the default. However, the *Sundown* court elevated that factor to a *requirement,* stating that the good cause standard "requires a party seeking relief from an entry of default under Rule 55(c) to provide an explanation for the default." 383 S.C. at 607, 681 S.E.2d at 888. The court went even further and also required that the moving party "give reasons why vacation of the default entry would serve the interests of justice." *Id.* Thus, the standard of good cause is now interpreted in two ways that are different from the law available to the trial court. First, the reason for the default is no longer merely a factor to be considered. Rather, the party seeking relief from default is required "to provide an explanation for the default." Second, the party seeking relief must give "reasons why vacation of the default would serve the interests of justice." The circuit court must consider all of this in determining whether or not the explanation for the default is satisfactory.[28]

### c. The Sundown Analysis Applied to These Facts

In this case, Hulsey has complied with the requirement of providing an explanation for the default: an attorney miscalculated the due date of the answer. The next question posed by *Sundown* was never considered by the trial court. Instead of considering whether vacating the default would serve the interests of justice, the trial court focused on whether the explanation was reasonable. The court found "no good reason" was presented. It also stated that there was "no reasonable basis" for the "assumption that the 30 day time to file an answer starts completely anew upon remand." (emphasis omitted). At one point the trial court called this "confusion." The

---

28. The court went on to explain that the *Wham* factors come into play after the explanation is accepted by the court. "Once a party has put forth a satisfactory explanation for the default, the trial court must also consider [the *Wham* factors]." 383 S.C. at 607–08, 681 S.E.2d at 888.

reasonableness of the explanation is certainly a valid factor to consider. However, *Sundown* requires a broader inquiry, namely that the reasonableness of the explanation be considered as a part of the analysis of whether vacating the default would serve the interests of justice.

The facts of this case demonstrate the importance of the broader inquiry. The conduct of the lawyer in this case was not "reasonable." First, he should have filed an answer in federal court before the remand order was entered. *See* Rule 81(c)(2), FRCP. Second, when he learned of the remand order, he should have raced to the county courthouse to file it. A trial judge must consider the attorney's unreasonable failure to do this. However, as to the specific question of whether excusing the unreasonable failure in this case serves the interests of justice, there are additional factors that are important to consider. First, the lawyer was apparently attempting to correctly calculate the deadline for his answer. Second, South Carolina law provides no guidance as to when the answer was actually due in state court. Even the majority declines to define the due date for the answer, stating only that Hulsey failed to meet it, whatever it was.

The fact that the lawyer was trying to correctly follow the rules is particularly relevant to "the interests of justice." Many of our appellate decisions have stated the principle that a lawyer's negligence in failing to file an answer is imputable to the defaulting litigant, and thus weighs against granting relief from default. *See generally Richardson*, 383 S.C. at 618–19, 682 S.E.2d at 267. In each of the cases citing this principle, the negligence was in *failing to attempt* to answer the complaint, not in *failing at an attempt* to serve a timely answer. This distinction is important to the interests of justice. Justice should not relieve a lawyer or litigant who makes no attempt to comply with the rules, or who negligently fails to comply with a rule that is clear. However, the interests of justice should protect a lawyer who attempts to comply with the rules, particularly when the lawyer is attempting to meet a deadline which is so *unclear* that no rule or court has ever defined it.

In my opinion, applying the newly-defined standard for good cause under *Sundown* is likely to yield a different result. In

reaching this conclusion, I am influenced by the reasoning of our supreme court in affirming the trial court's order granting relief for a late answer in *Lee v. Peek*, 240 S.C. 203, 125 S.E.2d 353 (1962). Though *Lee* is not controlling because it was decided before the Rules of Civil Procedure based on a standard other than good cause, the facts of Lee are strikingly similar to the facts presented here, and the court's analysis seems particularly relevant in light of *Sundown*.

Davis Lee sued the NAACP and six residents of Anderson County in the Court of Common Pleas of Abbeville County. 240 S.C. at 204, 125 S.E.2d at 353. Three of the Anderson County residents retained a lawyer, who made a motion to change venue to Anderson. 240 S.C. at 205, 125 S.E.2d at 353. Before the motion to change venue could be heard, the NAACP removed the case to federal court. *Id.* The three Anderson residents represented by the lawyer filed a motion to remand, which was granted. *Id.* The same attorney then refiled the motion to change venue. *Id.* During all of this time, the lawyer did not file an answer because "he was under the erroneous impression that it was not necessary for him to answer or demur in the State Court until the motion for change of venue had been decided." 240 S.C. at 205, 125 S.E.2d at 354.

The *Lee* attorney's failure to answer was unreasonable. The circuit judge "found as a matter of fact that counsel had misconceived the applicable procedural law." 240 S.C. at 206, 125 S.E.2d at 354. That finding is much like that of the trial court here that "there was no good reason presented by the defendants for their failure to file a timely answer, other than attorney confusion about the deadline for when an answer was due." However, the trial judge in *Lee* did not focus on the reasonableness of the lawyer's action. Rather, focusing on what the *Sundown* court has now instructed trial courts to consider, the circuit judge in *Lee* held "that it was *in the furtherance of justice* that the respondents be relieved of any default." *Id.* (emphasis added).

### d. Conclusion as to Rule 55(c)

*Sundown* changed the analysis of good cause by requiring for the first time that the trial court focus on "reasons why

vacation of the default entry would serve the interests of justice." I believe that if the trial court had analyzed this question, rather than whether the attorney was reasonable in failing to file a timely answer, the outcome might have been different. The supreme court recognized in *Lee* that the decision as to what is "in the furtherance of justice" is for the circuit court. It is not the task of this court to answer the question posed by *Sundown*. However, it is the duty of this court to see that the question gets answered. I would reverse the judgment of the lower court, and remand the case for a determination of whether good cause exists under *Sundown*.