673 S.E.2d 808

**James S. RICHARDSON and Karolina
M. Richardson, Petitioners,**

**v.**

**DONALD HAWKINS CONSTRUCTION, INC., Donald Hawkins,
Sharon Preu, as Personal Representative for the Estate of
Joseph Taylor and James Hodge, Defendants,**

**Of Whom Donald Hawkins Construction, Inc.
and Donald Hawkins are, Respondents.**

No. 26575.

Supreme Court of South Carolina.

Heard Oct. 22, 2008.

Decided Feb. 9, 2009.

Rehearing Denied Feb. 9, 2009.

Steven Smith McKenzie, of Manning, for Petitioners.

Kenneth R. Young, Jr., of Sumter, for Respondents.

## ORDER

Respondents have filed a petition for rehearing. The petition for rehearing is denied. The original opinion, however, is hereby withdrawn and the attached opinion is substituted in its place.

s/Jean H. Toal, C.J.

s/John H. Waller, Jr., J.

s/Costa M. Pleicones, J.

s/John W. Kittredge, J.

s/Larry B. Hyman, Jr., A.J.

Justice WALLER:

We granted petitioners' request for a writ of certiorari to review the Court of Appeals' opinion in *Richardson v. Donald Hawkins Constr., Inc.*, 370 S.C. 125, 634 S.E.2d 9 (Ct.App. 2006). We reverse.

## FACTS

Petitioners James and Karolina Richardson purchased a house from respondents Donald Hawkins Construction and Donald Hawkins in 1999. After moving in, petitioners noticed several cosmetic and structural problems with the house. Initially, respondents sent a representative to repair the problems, but as the problems persisted, respondents stopped responding to petitioners' service requests. In February 2001, petitioners retained legal counsel who contacted respondents by letter about completing the home repairs. Counsel's letter demanded a response by March 7, 2001; respondents never answered the letter.

On March 12, 2001, petitioners' residence was severely damaged by a fire that investigators concluded was intentionally set.

On May 21, 2002, the police questioned Joseph Taylor about the arson. Taylor, an employee of respondent Hawkins, gave the police a written statement in which he claimed to have overheard Hawkins ask another coworker, James Hodge, to burn down petitioners' house because petitioners were threatening to sue him due to the problems with the house ("Statement One"). According to Statement One, Hodge later told him Hawkins offered him $2,000 to burn the house down; a few days later, Taylor learned that Hodge had set the fire but had not succeeded in burning the entire house down.

Due to investigators' suspicions that Taylor was more involved in the arson than he revealed in Statement One, he was interviewed again later that afternoon. Following this interview, Taylor submitted another written statement to the police ("Statement Two"). In Statement Two, Taylor admitted that Hawkins approached **both** him and Hodge and offered them

$2,000 to burn down petitioners' house. While Taylor acted as lookout, Hodge crawled under the house and ignited a jug filled with flammable liquid. The following day, Hodge told Taylor that, because the house was not completely destroyed, Hawkins gave him only $1,000. Taylor claimed he did not get any money for his role as lookout.

Two days after giving the police the written statements, Taylor wrote and signed the following statement ("Statement Three") before two witnesses and a notary:

I Joseph Taylor has [sic] never been paid by Donnie Hawkins for doing anything illeagle [sic]. Donnie paided [sic] me for subcontracting carpentry work only. I have never heard or seen him pay anyone to do anything illeagle [sic]!

According to Taylor's mother, Sharon Preu, Taylor visited her shortly after being questioned by the police and told her that the statements he had made to police were "all a lie." During trial, Preu's testimony was proffered. Preu stated that Taylor told her the police "had him in Sumter all day long and ... cussed at him." According to Preu, Taylor said he was promised no jail time if he confessed, so he told police that he "and Mr. Hodge had done it and that it was all a lie, that they had offered him two years probation if he was to go along with it." ("Statement Four").

Petitioners consented to having all criminal charges regarding the arson dropped in order to pursue a civil case. Thereafter, a civil suit was filed against Taylor, Hodge, Hawkins, and Donald Hawkins Construction, Inc. Taylor was served a summons and complaint, but he failed to file an answer. In May 2003, petitioners filed an affidavit of default as to defendant Taylor. In January 2004, before the case went to trial, Taylor died in an unrelated automobile accident.

In September 2004, the trial court ruled on several pre-trial matters, including the admissibility of Statements One, Two, and Three. First, the trial court ruled on the status of petitioners' case against Taylor's estate, represented after his death by Preu. The trial court found that Taylor's default prior to his death put the estate in the procedural posture of having admitted all of the allegations contained in the complaint. As to Statements One and Two, the court found them admissible against the remaining defendants under the state-

ments against interest exception to hearsay described in Rule 804(b)(3), SCRE.[1] As to Statement Three, however, the circuit court excluded Taylor's own written statement under Rule 403, SCRE. The circuit court concluded that the probative value of the written statement was substantially outweighed by the danger of unfair prejudice because, due to his default, Taylor was deemed to have admitted all allegations in the complaint.[2]

At trial, the defense proffered the testimony of Preu concerning Taylor's statements to her after he had been questioned by police (i.e., Statement Four). Petitioners objected on hearsay grounds, and the trial court found the statement did not fall within a hearsay exception. The trial court further stated that Taylor's statements to Preu simply were denials of his involvement in the arson and thus, ruled them inadmissible.

At the conclusion of trial, the jury found the defendants liable and awarded petitioners $84,758 in actual damages and $150,000 in punitive damages against Hawkins Construction; $5,500 in actual damages and $5,000 in punitive damages against Hodge; and $5,500 in actual damages and $250,000 in punitive damages against Hawkins.[3] The jury did not award petitioners any damages against Taylor's estate.

Only Respondents Donald Hawkins Construction, Inc. and Hawkins appealed from the jury's verdict. The Court of Appeals reversed and remanded for a new trial.

The Court of Appeals based its reversal on Rule 806, SCRE.[4] Because Taylor's first two statements were admitted

---

1. At trial, the circuit revised its basis for the admission of Statement One. The circuit court found Statement One admissible as a statement by a co-conspirator of a party during the course and furtherance of a conspiracy pursuant to Rule 801(d)(2)(E), SCRE. The circuit court upheld its ruling *in limine* on Statement Two, admitting the statement under the statement against interest exception to hearsay.

2. For example, the Complaint specifically alleged that Hawkins agreed to pay Hodge and Taylor $2,000 to burn down petitioners' house.

3. By post-trial order, the punitive damages award against Hawkins was reduced from $250,000 to $49,500.

4. Rule 806 provides:

under hearsay rules 801 and 804, the Court of Appeals concluded that "[p]ursuant to Rule 806 and basic concepts of fairness," the defense should have been allowed to impeach Taylor with evidence that was inconsistent with Statements One and Two. *Richardson,* 370 S.C. at 130, 634 S.E.2d at 12.

## ISSUE

Did the Court of Appeals err in reversing the trial court's decision to exclude Taylor's Statements Three and Four?

## DISCUSSION

■ Petitioners argue the trial court did not abuse its discretion by finding Statements Three and Four inadmissible, and therefore the Court of Appeals erred by reversing the trial court's decision to exclude the evidence. We agree.

Evidence is relevant and admissible if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rules 401, 402, SCRE. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Rule 403, SCRE.

■ It is well settled that the admission and rejection of testimony is largely within the trial court's sound discretion, the exercise of which will not be disturbed on appeal absent an abuse of that discretion. *E.g., Pike v. South Carolina Dep't of Transp.,* 343 S.C. 224, 234, 540 S.E.2d 87, 92 (2000)

In our opinion, it was within the trial court's discretion to exclude Taylor's Statements Three and Four pursuant to Rule 403, SCRE. In its pretrial Rule 403 ruling, the trial court noted the unusual procedural posture of the case because of

When a hearsay statement, or a statement defined in Rule 801(d)(2)(C), (D), or (E) has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

defendant Taylor's default. The trial court found that because Taylor was considered to have admitted the allegations of the complaint, his statements denying the same allegations would be unduly prejudicial. Likewise, the trial court excluded Statement Four in part because it amounted to a denial of the allegations that were already deemed admitted by Taylor. The trial court clearly believed that by admitting these statements, the jury would have been misled and/or confused on the issues presented, and therefore, the court properly excluded them. *See* Rule 403, SCRE; *see also* Rule 220, SCACR (this Court may affirm any ruling based upon any ground appearing in the record). Given the factual and procedural circumstances of the instant case, we hold the trial court did not err in this determination.

## CONCLUSION

We find the trial court did not abuse its discretion in excluding Taylor's Statements Three and Four. Accordingly, we reverse the Court of Appeals' decision, and reinstate the jury's verdict, as modified by post-trial order.[5]

**REVERSED.**

TOAL, C.J., PLEICONES, KITTREDGE, JJ., and Acting Justice LARRY B. HYMAN, JR., concur.