725 S.E.2d 676

**CITY OF NORTH MYRTLE BEACH, Respondent,**

v.

**EAST CHERRY GROVE REALTY CO., LLC, The State of South Carolina, and John Doe, Defendants,**

**Of whom East Cherry Grove Realty Co., LLC is the Appellant,**

and

**The State of South Carolina is Respondent.**

**No. 27113.**

Supreme Court of South Carolina.

Heard March 8, 2012.

Decided April 11, 2012.

Rehearing Denied May 24, 2012.

498

Gene M. Connell, Jr., of Kelaher, Connell & Connor, of Surfside Beach, for Appellant.

Attorney General Alan Wilson and Assistant Deputy Attorney General J. Emory Smith, Jr., of Columbia, and Michael W. Battle, of Battle, Vaught & Howe, of Conway, for Respondents.

Justice PLEICONES.

Appellant East Cherry Grove Realty Co., LLC, appeals from a jury verdict finding that the State of South Carolina holds title to disputed canals in North Myrtle Beach. The question was submitted to the jury on three theories: that two quitclaim deeds established title in the canals; that the canals had been dedicated to the public; and that the State of South Carolina holds title to the canals in trust for the public. The jury returned a verdict for the State on all three theories. Appellant argues that the trial court erred when it denied Appellant's motions for directed verdict on each theory. We

find that the question of ownership under the quitclaim deeds was properly submitted to the jury and therefore affirm.[1]

## FACTS

In 1961, the State of South Carolina (State) filed suit against the predecessors in interest of East Cherry Grove Realty, LLC (collectively, East Cherry Grove), seeking to establish its title to all tidal lands in the East Cherry Grove area of North Myrtle Beach. In 1963, a consent order stipulated that certain property was not a subject of the suit and exempt from a temporary injunction that prevented East Cherry Grove from selling any property below the mean high-water mark.[2] The order provided in relevant part that

Since this action was filed[,] the title to certain property not intended by the [State] to be included in this suit, has been questioned.... In order that the title to this property (that above the unquestioned mean high water mark) could be quieted a survey was made....

*Ordered*[,] that all the land lying between said ... "estimat- . ed line of Demarcation between upland and marsh land" ... and the Atlantic Ocean is hereby released and is declared not to be involved in nor within the scope of the above entitled action as it is and was above the mean high water mark of the adjacent tidal water prior to any alleged artificial changing of the level of the land or of the waterway.

After a bench trial, the trial judge ruled in favor of East Cherry Grove. However, in 1969, while the case was on appeal to this Court, the parties negotiated a settlement. As part of the settlement, the parties exchanged quitclaim deeds. These deeds defined an "agreed-on mean high water mark" by metes and bounds, which appeared as a bold line enclosing an

---

1. Under the two-issue rule, we need not reach the questions whether the other two theories were properly submitted to the jury. *Smoak v. Liebherr–America, Inc.*, 281 S.C. 420, 422–23, 315 S.E.2d 116, 118 (1984).

2. The land that was released from the temporary injunction is shown on the related plat as the area between the "Estimated Line of Demarcation Between the Upland and Marshland as of 1948–49" and the Atlantic Ocean.

area of marshlands on the related plat. The agreed mean high-water mark referred to in these deeds is not coterminous with the "Estimated Line of Demarcation" used in the 1963 order. The deeds quitclaimed all of the land "below" that mark, i.e., the land within the bold line (State's Land), to the State and all of the land "above" that mark, i.e., the land between the marshlands and the oceanfront (East Cherry Grove's Land), to East Cherry Grove. The deed from East Cherry Grove to the State contains additional language as follows:

> That all areas lying below the agreed mean high water mark on Northeast Canal, Nixon Canal, proposed Nixon Canal Extension, Main Channel, Nye Cut and all other existing canals are quitclaimed to the State of South Carolina, except that: It is understood and agreed that Nye Cut will remain open until Main Channel ("proposed relocation of Creek") between 25th Avenue and Nixon Canal has been cut, at which time C.D. Nixon, et al, will have the right to build a bridge at either 22nd Avenue or 23rd Avenue across Main Channel, and close Nye Cut, all as shown on the said plat; and title to land proposed to be closed will remain in C.D. Nixon, et al.

> That all areas that become areas lying below the mean high water mark as the result of excavation above the agreed mean high water mark are quit-claimed to the State of South Carolina.

The quitclaim deeds were approved and made part of a 1969 court order ending the original litigation. The 1969 order also stated that it did not affect the 1963 order.

The parties agree that the canals have been open to public use at all times since their construction.

Respondent City of North Myrtle Beach (City) brought the present lawsuit against East Cherry Grove, LLC (Appellant), and the State to settle title to the canal bottoms located in the property deeded to East Cherry Grove in the 1969 settlement. The City asserted that the State held title to the canal bottoms, a position in which the State concurred. (Hereinafter the City and State are jointly designated Respondents.) At the conclusion of a jury trial, the trial court denied Appellant's motions for a directed verdict. The jury returned a

special verdict with separate findings that the State has title in the canals based on the quitclaim deeds; that East Cherry Grove had dedicated the canals to the public; and that the State holds title to the canals in trust for the public. This appeal followed.

## ISSUES

1. Did the trial court err when it failed to find the 1963 order conclusive on the issue of ownership and found the quitclaim deeds ambiguous?
2. Did the trial court err when it failed to find that the State is estopped to deny the 1963 order?

## STANDARD OF REVIEW

 The nature of the underlying issue determines the nature of a suit for declaratory judgment. *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991). The determination of title to real property is an action at law. *Wigfall v. Fobbs,* 295 S.C. 59, 367 S.E.2d 156 (1988). In reviewing an action at law tried to a jury, the Court's jurisdiction extends only to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence that reasonably supports the jury's findings. *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976). Questions of law are decided with no particular deference to the trial court. *Wiegand v. U.S. Automobile Association,* 391 S.C. 159, 163, 705 S.E.2d 432, 434 (2011).

## DISCUSSION

Appellant argues that the trial court erroneously refused to grant it a directed verdict because title to the canals was unambiguously established in East Cherry Grove in the court-approved settlement of prior litigation. We disagree.

On the first theory submitted to it, the jury found that the State owns the canals under the quitclaim deeds. Appellant argues that the trial court erred when it denied Appellant's motion for a directed verdict and submitted this question to the jury. Appellant argues in the alternative that the trial court should have found that the 1963 order was conclusive on

the issue of ownership; that the quitclaim deeds unambiguously quitclaimed all interest in the canals to East Cherry Grove; and that the State is estopped by the 1963 order from claiming ownership of the canals. We find no error.

 1. *Did the trial court err when it failed to find the 1963 order conclusive on the issue of ownership and found the quitclaim deeds ambiguous?*

█ Appellant argues that the 1963 order is conclusive on the issue of ownership under the quitclaim deeds because it effectively eliminates contradictory language from the quitclaim deeds, rendering them unambiguous, or, in the alternative, that the language of the quitclaim deeds unambiguously conveys all interest in the canals to East Cherry Grove. We disagree.

█ "As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intent of the court, as gathered, not from an isolated part thereof, but from all the parts of the judgment itself. Hence, in construing a judgment, it should be examined and considered in its entirety. If the language employed is plain and unambiguous, there is no room for construction or interpretation, and the effect thereof must be declared in the light of the literal meaning of the language used." *Weil v. Weil,* 299 S.C. 84, 90, 382 S.E.2d 471, 474 (Ct.App.1989) (citations and internal quotation marks omitted).

In this case, the original suit was ultimately settled by the 1969 order, which incorporated the parties' quitclaim deeds and stated that it did not affect the 1963 order. Thus, the 1963 order and quitclaim deeds must be interpreted as parts of a single, court-approved settlement agreement.

The 1963 consent order does contain language arguably implying that most property in the area of East Cherry Grove's Land as established in the deeds is titled in East Cherry Grove. Appellant construes this language as both the State's admission that it had no claim to that land in 1963 and the court's ratification in 1969 that none of East Cherry Grove's Land would be quitclaimed to the State by virtue of the settlement agreement. We disagree.

Viewed in isolation, the 1969 reference to the 1963 order is susceptible of this interpretation. As explained below, howev-

er, construing all of the documents together we find the settlement at least ambiguous as to ownership of the canal bottoms. First, this argument ignores the fact that the land was divided by one line, the Estimated Line of Demarcation, in the 1963 order and by a different line, the agreed-on mean high water mark, in the deeds. Second, Appellant's argument ignores the fact that when parties settle a lawsuit, either may include property or other concessions not a part of the original suit. In other words, whatever land was involved in the original suit, the settlement was not necessarily limited to that property. The court might have approved East Cherry Grove's quitclaim of any property to the State as consideration to settle the suit without believing such a transfer would conflict with the 1963 order. The court's purpose for stating in the 1969 order that the settlement did not affect the 1963 order could have been nothing more than to avoid any taint on the title to lots sold by East Cherry Grove to third parties between 1963 and 1969.

An examination of the quitclaim deeds bears out such an interpretation. The first paragraph of the quitclaim deed from East Cherry Grove to the State quitclaims all right to "All of that certain area . . . shown on a plat . . . to be below the agreed mean high water mark as delineated on said plat" and proceeds to describe this agreed line by metes and bounds. Had the parties intended the Estimated Line of Demarcation established in the 1963 order to finally settle title, the delineation of an agreed mean high-water mark in the deeds would have been unnecessary. Moreover, the agreed mean high-water mark replicates the Estimated Line of Demarcation in only a small fraction of its length.

In addition, in a subsequent paragraph the deed quitclaims to the State "all areas lying below the agreed mean high water mark on Northeast Canal, Nixon Canal, proposed Nixon Canal Extension, Main Channel, Nye Cut and all other existing canals . . . ." The plat shows that all of the existing and proposed canals were located on East Cherry Grove's Land.

Further, the quitclaim deed to the State specifically excludes certain items on the plat from its ambit. The plat can be characterized as a rectangle, the top of which (west) is given to the State without reservation and the bottom of which is deeded generally to East Cherry Grove. Within the area

deeded generally to East Cherry Grove, however, certain parts, mostly waterways, are singled out for special treatment. First, an area to the left of the lower portion (south), the "Recreational Lake," is specifically excluded from the deed. Similarly, an area to the right of the lower portion (north), is also excluded. In the center portion of the plat deeded to East Cherry Grove, however, the existing canals "are quit-claimed to the State of South Carolina," as are any future canals. The only exception to the title in the canals going to the State is found in reference to Nye Cut, where the deed specifically envisions future changes involving the filling of that waterway and the vesting of title in that future highland in East Cherry Grove. While the affirmation of the 1963 order in the 1969 settlement arguably can be read to reaffirm title in East Cherry Grove in the whole of the lower portion of the plat, such a reading renders all of the specific exceptions and exemptions in this quitclaim deed meaningless.

Appellant argues in the alternative that the quitclaim deed's references to the canals were not to the whole of the canals but to the junctures of the canals with the State's Land or that this language constituted a promise that East Cherry Grove would not dam the canals. Even if these interpretations are possible, they are not apparent from a straightforward reading of the deed's language. At a minimum, this language permits the interpretation that East Cherry Grove intended to quitclaim title to the bottoms of these canals to the State.

A later dispute between East Cherry Grove and a resident who had purchased a lot on the Recreational Lake was heard by the same judge, who concluded "That the area comprising Recreational Lake is not now and never was owned by [East Cherry Grove]." This finding is inconsistent with Appellant's interpretation of the settlement agreement. Rather, it confirms that the 1963 order was not included with the 1969 order for the purpose of affirming that East Cherry Grove had title to all of the area comprising East Cherry Grove's Land and gives effect to the quitclaim deed's exclusion of the Recreational Lake from what remained East Cherry Grove's Land.

We find that the 1963 order and quitclaim deeds, interpreted as parts of the 1969 settlement agreement and court order, do not unambiguously quitclaim all interest in the canals to East Cherry Grove. Thus, the trial court did not err when it

refused to rule that the 1963 order conclusively established title to the canals in East Cherry Grove and found the quitclaim deeds ambiguous.

2. *Did the trial court err when it failed to find that the State is estopped to deny the 1963 order?*

■ Appellant argues that the trial court erred when it denied Appellant's motions for nonsuit and directed verdict on the basis that the State is judicially estopped from denying that East Cherry Grove owned all of the area containing the disputed canal bottoms based upon the 1963 order. We disagree.

■ "Judicial estoppel is an equitable concept that prevents a litigant from asserting position inconsistent with, or in conflict with, one the litigant has previously asserted in the same or related proceeding. The purpose of the doctrine is to ensure the integrity of the judicial process, not to protect the parties from allegedly dishonest conduct by their adversary." *Cothran v. Brown*, 357 S.C. 210, 215, 592 S.E.2d 629, 631 (2004) (citations omitted).

In this case, the 1963 order fails to demonstrate a definite position taken by the State with regard to canal bottoms located within East Cherry Grove's Land. Even if it did, principles of judicial estoppel would not apply where a contrary position as to title is premised on intervening documents such as the quitclaim deeds here. Permitting the State to argue that it has title to the canals certainly does not threaten the integrity of the judicial process.

We find that the elements of judicial estoppel are not met, the State is not estopped to assert title to the canal bottoms, and the trial court did not err when it denied Appellant's motions for nonsuit and directed verdict.

■ Because the State is not estopped to claim title to the canal bottoms under the 1963 order, the 1963 order does not answer the question of ownership, and the quitclaim deeds were ambiguous, the trial court did not err when it denied Appellant's motion for nonsuit and directed verdict and submitted the question of ownership under the quitclaim deeds to the jury.

Appellant's remaining exceptions are disposed of pursuant to Rule 220(b), SCACR, and the following authorities: *North*

*Greenville College v. Sherman Construction Co., Inc.,* 270 S.C. 553, 557, 243 S.E.2d 441, 442 (1978) (trial court has broad discretion to determine the admissibility of evidence, and its decisions are reversed only when they constitute an abuse of discretion that amounts to an error of law); Rule 403, SCRE; *Richardson v. Donald Hawkins Construction, Inc.,* 381 S.C. 347, 352, 673 S.E.2d 808, 811 (2009) (permitting exclusion of evidence that would mislead or confuse the jury, constitute undue delay or waste of time, or be cumulative); *State v. Rabon,* 275 S.C. 459, 461, 272 S.E.2d 634, 636 (1980) (judge's charge to the jury must correctly state the law, but reversal is not warranted "when considered as a whole, [the charge] adequately cover[s] the applicable law under the facts of the case"); *Hardin v. South Carolina Dept. of Transp.,* 371 S.C. 598, 609 n. 4, 641 S.E.2d 437, 443 n. 4 (2007) ("Government action can effect no taking unless it has deprived an owner of a property interest.").

## CONCLUSION

For the reasons given above, the jury verdict is **AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.